**LIBERTY NATIONAL BANK AND TRUST COMPANY,**
Appellant–Plaintiff,

v.

**James R. PAYTON, Appellee–Defendant.**

No. 59A01–9208–CV–277.

Court of Appeals of Indiana,
First District.

Nov. 2, 1992.

---

Garret B. Hannegan, Morgan and Pottinger, P.S.C., New Albany, for appellant-plaintiff.

No counsel for appellee-defendant.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Liberty National Bank and Trust Company ("Liberty") appeals from a judgment in favor of James R. Payton in an action regarding the payment of a debt. We affirm.

## ISSUES

We restate the issues as follows:

1. Did the trial court err in finding adequate proof of Payton's bankruptcy court discharge?

2. Was the March 24, 1989 loan ("1989 Loan") a new debt created post-bankruptcy supported by sufficient consideration or a reaffirmation of a debt incurred pre-bankruptcy?

3. Was Payton equitably estopped from denying liability under the 1989 Loan?

## FACTS

On April 30, 1987, Liberty's predecessor loaned Payton $7,708.64 to finance the purchase of a 1975 Ford wrecker ("1987 Loan"). Payton granted Liberty a security interest in both the 1975 Ford wrecker and a 1975 Ford school bus. Record at 98. Liberty's lien on the school bus, however, was not properly perfected, and therefore, not secured. Record at 108. The 1987 Loan was to mature on April 30, 1990.

On July 28, 1988, Payton refinanced a previous note for $2,412.00 ("1988 Loan"), to be repaid in one payment, principal plus interest, maturing in ninety days. The purpose of the 1988 Loan was to bring the payments on a pre-bankruptcy loan up to date.[1] Record at 111 and 146. As security, Payton granted Liberty an interest in two vehicles, a 1978 Oldsmobile and a 1973 Chevrolet. Record at 97.

On March 24, 1989, Payton refinanced and consolidated the 1987 and 1988 Loans with Liberty into one installment loan, the 1989 Loan. The 1989 Loan had a principal balance of $6,897.97, to be paid in thirty-five installments. The maturity date, before acceleration of the balance by default, was February 25, 1993. Payton again granted Liberty a security interest in the 1975 Ford school bus. Record at 5. The 1975 Ford wrecker was not offered as security, as it had been stolen, and the two vehicles previously used as collateral were worthless at the time of the 1989 Loan. Record at 102, 104, 106, and 149.

Subsequently, Payton defaulted on the 1989 Loan and Liberty brought suit. Payton asserted as affirmative defenses his discharge in bankruptcy and lack of consideration. A bench trial was held on January 24, 1992. After taking matters under advisement, the trial court entered judgment in favor of Payton finding that Liberty's reaffirmation of the discharged debt did not meet the requirements of 11 U.S.C. § 524, governing the enforceability of reaffirmation agreements under the Federal Bankruptcy Code. Record at 79–80. Liberty now appeals. Other relevant facts will be stated in our discussion of the issues.

## DISCUSSION AND DECISION

Initially, we note that Payton has not filed an appellee's brief in this case. Therefore, if Liberty shows *prima facie* error, we may reverse the trial court's ruling. *Equimart Ltd., Inc. v. Epperly* (1989), Ind.App., 545 N.E.2d 595, 597.

*Issue One*

Liberty argues that the trial court erred in finding adequate proof of Payton's bankruptcy court discharge. The party asserting the affirmative defense of discharge in bankruptcy has the burden of proving that a discharged was granted. Ind.Trial Rule 8(C). Payton met this burden. At trial, Payton testified that on October 27, 1987, he filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Record at 119–21. A copy of the petition was introduced into evidence without objection. *See* Record at 120–37. The petition listed Liberty's predecessor, lender of the 1987 Loan, as a creditor holding a security interest. *See* Record at 126. Payton further testified that he had received a discharge order from the bankruptcy court dated March 16, 1988. Record at 142. Likewise, Liberty's vice-president testified that Liberty's predecessor received notice of the bankruptcy petition and discharge. Record at 176. Liberty, however, objected to Defendant's Exhibit 3, the purported record of discharge, as being hearsay and arguing that the discharge had not been certified or authenticated by the bankruptcy court. Record at 142–44.

---

1. It is not clear from the Record which loan was being brought up to date.

The trial court granted Exhibit 3's introduction into evidence for the limited purpose of showing Payton's state of mind. Record at 142–44.

 As Liberty correctly points out, generally authentication for the admission of an official record requires an officer having custody of the record to attest, by testimony or by certification, that it is the official original record, or a true and accurate copy thereof. Ind.Trial Rule 44(A)(1); *Kelly v. State* (1990), Ind., 561 N.E.2d 771, 773. Here, although the discharge notice, Defendant's Exhibit 3, was not properly authenticated, its admission into evidence was merely cumulative of Liberty's vice-president's testimony that Liberty's predecessor had in fact received notice of the discharge from the bankruptcy court. *See* Record at 176–77. Hence, error, if any, in the admission or reliance by the trial court on Defendant's Exhibit 3 was harmless. *See Coffey v. Wininger* (1973), 156 Ind. App. 233, 236–39, 296 N.E.2d 154, 157–58.

*Issue Two*

 Liberty further argues that the 1989 Loan is a new obligation supported by independent consideration, thus obviating the need to consider whether the parties followed the debt reaffirmation procedures set forth in 11 U.S.C. § 524. We disagree.

In relevant part, the Bankruptcy Code provides:

"(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived...."

11 U.S.C. § 524(c). Here, the 1989 Loan was a consolidation and refinancing of Payton's prior 1987 and 1988 Loans. Record at 96. Clearly, the 1989 Loan was entered into post-bankruptcy. The 1987 Loan, however, was entered into prior to the time Payton filed his petition in bankruptcy on October 27, 1987. Record at 119–21. Since the consideration for the 1989 Loan was based in part upon the 1987 Loan, the 1989

Loan may be enforced only if Liberty meets its burden of showing compliance with the requirements of § 524(c) and (d) prohibiting the reaffirmation of a discharged debt unless first approved by the bankruptcy court. *See In re Bowling* (Bankr.S.D.Ind.1990), 116 B.R. 659, 663–65 (agreement to repay debt owed prior to bankruptcy, which takes form of new loan contract, unenforceable due to failure to follow strict rules of reaffirming debt).

 Exceptions to the general rule of dischargeability of debts are to be strictly construed in favor of the debtor. *In re Burton* (Bankr.N.D.Ind.1988), 132 B.R. 575, 582. This is done to effectuate the fresh start policies of the Bankruptcy Code. *Id.* § 524(c) and (d), except under very limited circumstances, make reaffirmation agreements based on dischargeable debts unenforceable. In order to be enforceable, a reaffirmation agreement must be made before the grant of a discharge. 11 U.S.C. § 524(c)(1). Further, the agreement must contain a clear and conspicuous statement advising the debtor the agreement may be rescinded any time prior to discharge; the agreement must be filed with the bankruptcy court; the debtor's attorney must submit an affidavit or declaration that the agreement was informed and voluntary and does not impose an undue hardship on the debtor; and, a hearing must be held informing the debtor that the agreement is not required and the legal consequences of the reaffirmation agreement. 11 U.S.C. § 524(c)(2), (3), (4), (5), and (d). Liberty has failed to show that any of the requirements of 11 U.S.C. § 524(c) and (d) have been met. *See Burton*, 132 B.R. at 582 (party who objects to discharge of particular debt has burden of proving nondischargeability).

 Although Payton indicated on his bankruptcy petition that he intended to reaffirm the 1987 Loan with Liberty's predecessor, no reaffirmation agreement was ever submitted to the bankruptcy court for its approval, as required by 11 U.S.C. § 524(c). *See* Record at 126 and 134. A statement of intent to reaffirm is not the same as reaffirming the debt itself pursu-

ant to the stringent provisions of 11 U.S.C. § 524(c). *In re Johnson* (Bankr.D.Dist.Col. 1990), 114 B.R. 799, 799. The 1989 Loan was an attempt to reaffirm a debt which had been in part discharged by the bankruptcy court and the agreement between Liberty and Payton did not meet the requirements of 11 U.S.C. § 524 governing the enforceability of reaffirmation agreements; therefore, the trial court correctly determined that Liberty's claim was legally unenforceable.

Liberty's reliance on *In re Peterson* (Bankr.D.Colo.1990), 110 B.R. 946, is of no avail. In *Peterson,* the debtor, an experienced businessman, elected post-petition to adopt and continue a pre-petition *lease* agreement. *Id.* at 950. In upholding the lease, the *Peterson* court distinguished those cases requiring strict compliance with 11 U.S.C. § 524 as a condition to the enforcement of a reaffirmation agreement by stating: "[t]hose cases do not involve, as here, (a) characteristics of executory contract or unexpired *lease* obligations, (b) a post-petition *lease* agreement, (c) new and substantial post-petition consideration." *Id.* (emphasis added). Here, there clearly was no lease obligation or executory contract involved. Liberty's contention that there was new and substantial post-petition consideration for the 1989 Loan is not persuasive. Liberty argues that the new consideration consisted of Payton being able to keep the 1975 Ford school bus; however, Liberty overlooks the fact that the 1987 Loan's security interest in the school bus was not properly perfected. *See* Record at 108. Further, there was no evidence of new funds being furnished to Payton post-bankruptcy; rather, the 1988 and 1989 Loans were refinancing of pre-bankruptcy debts. *See* Record at 4, 97, 111–13, and 146–47. Also, there was no evidence presented in the record that Payton made any fraudulent pledge of collateral as Liberty now asserts. Although the vehicles pledged as security for the 1988 Loan were not titled in Payton's name, the record shows the reason Liberty did not request the vehicles be used as collateral to secure the 1989 Loan was because the vehicles were worthless. *See* Record at 106–08.

Liberty has failed to persuade us to deviate from the stringent provisions of the Bankruptcy Code regarding reaffirmation.

*Issue Three*

Finally, Liberty argues that Payton should be equitably estopped from claiming the benefits of the discharge. More specifically, Liberty contends that Payton's conduct estopped him from asserting the benefits of his discharge. Equitable estoppel is established when there is a false representation or concealment of material facts made with actual or constructive knowledge; to one without knowledge or reasonable means of knowledge of the true facts with the intent that he rely upon it; and, the second party relied to his detriment. *Sheraton Corporation of America v. Kingsford Packing Company, Inc.* (1974), 162 Ind.App. 470, 476–77, 319 N.E.2d 852, 856. The representation of facts necessary may be demonstrated by the conduct of the party. *Id.* Whether such conduct shall operate as an estoppel depends largely upon the facts and circumstances of each particular case. *Id.* Liberty's claim of reliance on Payton's statement of intent is misplaced. *See Johnson*, 114 B.R. at 799. 11 U.S.C. § 524(f) states that nothing in subsections (c) or (d) prevents a debtor from voluntarily repaying any debt. We find that Payton cannot be estopped from claiming the benefits of discharge as he was within his statutory rights under the Federal Bankruptcy Code.

Affirmed.

ROBERTSON and BAKER, JJ., concur.