**In re MARKET SQUARE INN, INC., Debtor.**

**Bankruptcy No. 86–1136PGH.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 24, 1994.

David B. Salzman, Pittsburgh, PA, for David Lichtenstein.

M. Richard Dunlap, Bernhard Schaffler, Pittsburgh, PA, for Glass Plaza Associates.

Sidney Finkel, Pittsburgh, PA, for Market Square Inn, Inc.

Joel M. Helmrich, Pittsburgh, PA, for Transamerica Commercial Finance.

*OPINION*

WARREN W. BENTZ, Bankruptcy Judge.

*Introduction*

Before the Court for consideration is the request for approval of the Disclosure Statement ("Disclosure Statement") filed by Glass Plaza Associates ("GPA"). The Disclosure Statement has elicited numerous objections. Among the objectors are Market Square Inn, Inc. (the "Debtor") and David Lichtenstein ("Lichtenstein"), the Debtor's President and sole shareholder. GPA's Disclosure State-

ment and the accompanying Plan of Reorganization ("Plan") provide that GPA will infuse the funds necessary to consummate the Plan. GPA states that it is willing to fund the Plan to "end the ongoing uncertainties as to the eventual outcome of the lease issues and all pending litigation."

The centerpiece of this bankruptcy case and ongoing litigation before us is a lease of property in downtown Pittsburgh by GPA, as owner, and the Debtor, as tenant.

The Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on May 5, 1986 (the "Filing Date"). Prior to the Filing Date, the Debtor and Lichtenstein individually as Plaintiffs commenced a lawsuit (the "Lawsuit") in the Court of Common Pleas of Allegheny County against GPA and its general partner, PPG Industries, Inc. The Lawsuit arises from GPA's purported termination of the lease (the "Lease") between the Debtor and GPA. The Lawsuit is still pending. Further litigation concerning the Lease ensued in this Court and remains partially unresolved.

The Plan which GPA puts forth contemplates a termination of all litigation over the Lease. GPA contemplates that litigation instituted or which may be instituted by the Debtor will be terminated, and that any cause of action which Lichtenstein holds individually will also be terminated. We will defer the issue as to whether a plan may compel the Debtor, over its objection, to give up its claim against the plan proponent.

Lichtenstein asserts that there is no jurisdictional or legal basis for the termination of his causes of action against GPA under the Plan; that the Plan is therefore not confirmable; and thus, approval of the Disclosure Statement must be refused.

Although other objections remain unresolved, the preliminary legal issue is whether the Debtor's sole shareholder, Lichtenstein, can be compelled by the terms of the Plan to terminate his individual causes of action against the plan proponent. We directed the parties to file briefs on that issue. The matter is ripe for decision.

## Discussion

GPA asserts that the unique facts and the totality of circumstances in this case call for an expanded decision approving the effects of bankruptcy on non-debtor third-parties, in particular, a decision approving GPA's termination of Lichtenstein's causes of action against GPA by confirmation of GPA's Plan.

GPA points out that Lichtenstein, as the sole shareholder, Director and Officer of the Debtor, controls the Debtor; that the Debtor has not operated during the course of this case; that there are no operating statements to review; that there is no official Committee of Unsecured Creditors; that there are no secured creditors and there are no significant taxes owed. GPA asserts that Lichtenstein is violating his fiduciary duties to the Debtor and its creditors by directing the Debtor to continue to incur legal expenses in the litigation with GPA which GPA asserts is a benefit to Lichtenstein personally.

At the time of the bankruptcy filing, the Debtor's major asset was its Lease with GPA. Soon after the Filing Date, the Debtor filed a motion to assume the Lease. GPA opposed the motion on the ground that the Lease had been terminated. The issue of proper termination of the Lease was bifurcated from the remaining issue of whether the Debtor had the ability to assume the Lease. Following a six day trial, we found that the Lease remained in effect and that it had not been validly terminated. It was not until October 27, 1992 that our decision was affirmed by the Third Circuit Court of Appeals. *In re Market Square Inn, Inc.,* 978 F.2d 116 (3d Cir.1992). It was only following the Third Circuit's decision that the Debtor was once again in a position to restart its efforts to utilize the leased premises and the parties could begin to address the Debtor's request to assume the Lease.

We do not view Lichtenstein's pursuit of GPA as a violation of his fiduciary duties. Had the Debtor and Lichtenstein not pursued the litigation over the Lease, GPA would not now be proposing to fund a plan of reorganization in an effort to settle the litigation over the Lease. GPA's Plan proposes a payment of 15% to non-insider creditors. Lichtenstein asserts that the continued pursuit

of the litigation against GPA provides a possible recovery of over 100% to creditors with a remaining benefit for Lichtenstein, the equity holder. We have not determined the value of the Lease and thus do not know what the potential recoveries may be. However, it is only relatively recently that the Debtor has been able to pursue its objective of developing a restaurant in the leased premises. GPA's Plan proposes to reject the Lease, effectively cutting off the Debtor and Lichtenstein's efforts. GPA, as plan proponent, seeks to involuntarily eliminate through the Plan, Lichtenstein's causes of action against GPA without affording him the opportunity to present the merits of his causes of action or the value thereof to an appropriate court for resolution.

■ GPA relies upon § 105 of the Bankruptcy Code in support of its position that the Bankruptcy Court has jurisdiction to involuntarily impose a plan provision on a non-debtor, third-party which prevents that non-debtor from pursuing a cause of action against another non-debtor, third-party. Under § 105(a), the Bankruptcy Court has the power to issue any order "that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 105 provides the Court with broad equitable powers. Equitable powers, however, "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank v. Worthington Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988). *See also In re American Hardwoods, Inc.*, 885 F.2d 621 (9th Cir.1989).

■ In a Chapter 11 case, the debtor receives a discharge as to all of its debts upon entry of an order of confirmation of its plan of reorganization. 11 U.S.C. § 1141. Section 524(e) limits the effect of the discharge. It provides:

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524(e).

■ Thus, the discharge of the Debtor's obligations does not contemplate the same effect on the obligations and liabilities of third parties. *See First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir.1993). The bankruptcy laws do not operate as a method to relieve a non-debtor from potential liabilities stemming from lawsuits against them. *See In re Elsinore Shore Associates*, 91 B.R. 238 (Bankr.D.N.J.1988). GPA is not entitled to the use of the Debtor's Chapter 11 proceeding to receive a discharge of GPA's obligation, if any, to Lichtenstein.

■ GPA directs our attention to *inter alia MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2d Cir.1988) *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988), *In re A. H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir.1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989) and *UNARCO Bloomington Factory Workers v. UNR Industries, Inc.*, 124 B.R. 268 (N.D.Ill. 1990) in support of its position that Lichtenstein can be prevented and bound by the terms of the Plan from pursuing his claim against GPA.

In *Johns–Manville* and *A. H. Robins*, the claims of creditors were not impaired, even though they were being enjoined from pursuing non-debtor, third-parties. The party objecting to the settlement in *Johns–Manville* had the right to pursue its claim against the debtor's settlement fund which would yield the objector 100% of its claim. In *A. H. Robins*, the Court approved the debtor's plan which contained an injunction barring certain actions against non-debtor third-parties. The injunction, however, affected only those claimants who elected to "opt out" of the settlement that would have provided for payment of their claims in full.

In *UNR*, the Court enjoined all present and future asbestos victims from taking action against any insurance company that settled with the debtor. The claimants could recover their claims against a trust. Unlike the claimants in *Johns–Manville*, the *UNR* claimants would not be paid in full. However, the Court stated that even without the injunction, any actions against UNR's insurance carriers would be barred by the express exclusions contained in the policies. Thus, in each case, the prohibition against commenc-

ing an action against a non-debtor third-party resulted in no detriment to the claimant. None of these holdings mandate a blanket discharge for plan funders or prevent a non-debtor from pursuing his individual claim against a plan funder.

GPA also directs our attention to cases in which courts have issued injunctions for the protection of partners who contribute to a plan. *In re Myerson & Kuhn,* 121 B.R. 145 (Bankr.S.D.N.Y.1990); *In re Heron, Burchette, Ruckert & Rothwell,* 148 B.R. 660 (Bankr.D.Dist.Col.1992). We need not decide whether the close nexus between a partnership and its partners justifies relief for partners. In this case, the Debtor is a corporate entity. GPA and the Debtor are not jointly liable for any claim. Thus, this is not a situation where a release for the benefit of individual partners who contribute to a plan may be justified.

For a comprehensive discussion of cases on enjoining creditors from prosecuting suits against non-debtors, see Kenneth M. Lewis, *When Are Nondebtors Really Entitled to a Discharge: Setting the Record Straight on Johns–Manville and A. H. Robins,* Vol. 3, No. 2, *Journal of Bankruptcy Law and Practice,* 163 (January/February 1994) (discussing the interplay of sections 524(e) and 105(a)).

Further, this Debtor's bankruptcy does not present the type of unusual facts presented in the cases upon which GPA relies. In *Johns–Manville, A. H. Robins* and *UNARCO,* the debtors faced thousands of tort claims which required resolution prior to plan confirmation. The entire reorganizations depended on a resolution of massive quantities of claims. Without such a resolution, a reorganization was not feasible.

This Debtor's case revolves around the Lease issues. The Plan proposed by GPA is in effect a settlement offer to resolve those issues. The Debtor and Lichtenstein believe that the offer is inadequate. By continuing to seek financing to utilize the leased premises or in continued litigation with GPA, the Debtor *may* be able to produce a workable plan of reorganization which provides a greater return to creditors and a possible benefit to Lichtenstein in amounts substan-

tially greater than GPA's Plan offers. Lichtenstein asserts an individual cause of action against GPA.

Thus, we find no authority for the proposition that a non-debtor plan proponent may avoid liability to a third party by making its own discharge a part of the plan.

But, even if we were to conclude that such a plan should be, or lawfully could be, confirmed, we would face a jurisdictional problem.

Our jurisdiction to adjudicate Lichtenstein's claim against GPA is, at best, questionable. While we have core jurisdiction under 28 U.S.C. § 157 to adjudicate a claim against a debtor, and core and/or non-core jurisdiction over a claim by a debtor against a third party, we know of nothing which gives the bankruptcy court jurisdiction to adjudicate claims between two non-debtor third parties.

Even if we assume subject matter jurisdiction over the claims between Lichtenstein and GPA under a broad interpretation of 11 U.S.C. § 105, nothing has been done to make Lichtenstein a party to this bankruptcy case. If Lichtenstein's claim is to be destroyed or terminated, it would seem a necessary prerequisite that he be made a party through an adversary proceeding. But that preliminary step would fail because we would have no jurisdiction over Lichtenstein as a defendant in the action by a non-debtor party.

We conclude that Lichtenstein cannot be compelled in this case by the terms of the Plan to involuntarily relinquish his causes of action against the non-debtor, GPA.

This view is buttressed by consideration of a hypothetical case. Suppose Debtor is in Chapter 7, and that Debtor's Chapter 7 Trustee reaches an agreement with GPA to settle the lease dispute, and part of the settlement is that Lichtenstein be brought into the Bankruptcy Court and his separate cause of action be terminated. On such facts, it would seem clear that this Court would not have jurisdiction to terminate Lichtenstein's claim, and even if we had or acquired jurisdiction, it would be inappropriate to do so.

Where it is clear that a plan of reorganization is not capable of confirmation, it is appropriate to refuse the approval of the disclosure statement. *In re Filcas of America, Inc.,* 147 B.R. 297 (Bankr.D.N.H.1992); *In re 266 Washington Associates,* 141 B.R. 275 (Bankr.E.D.N.Y.1992), *aff'd,* 147 B.R. 827 (E.D.N.Y.1992); *In re Monroe Well Service, Inc.,* 80 B.R. 324 (Bankr.E.D.P.A.1987).

Since the element of the plan requiring the elimination of Lichtenstein's claim against the plan proponent renders the plan unconfirmable, we need not discuss whether the companion element, which would eliminate the Debtor's claim against the proponent, would independently render the plan unconfirmable.

Having determined that GPA's Plan is not confirmable as a matter of law, approval of GPA's Disclosure Statement will be refused.