**In re Leroy MICKENS, Jr., Debtor.**

**Leroy Mickens, Jr., Plaintiff,**

**v.**

**Waynesboro Dupont Employees Credit Union, Inc., Kevin Lounsbury, Robert W. Tyson, Defendants.**

Bankruptcy No. 595–011127–RWK–7.
Adversary No. 97–00105A–RWK.

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 7, 1999.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the Court arises as a result of a motion for an injunction filed by the debtor, Leroy Mickens, Jr. (herein Debtor) against the Waynesboro Dupont Employees Credit Union (herein Credit Union) for its violation of 11 U.S.C. § 524(a)(2).[1] For the reasons stated in this decision and order the Court finds that the Credit Union violated the post-discharge injunction and is liable for damages, attorney's fees and costs.

### *Facts:*

The uncontested facts in this case show that, on or about May 6, 1994, Debtor, Richie' Mickens and Mary Terrill executed a note in favor of Credit Union's predecessor, Staunton Employees Credit Union.[2] On December 20, 1995, Debtor filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Virginia, Harrisonburg Division. The Credit Union was listed as a creditor on Debtor's petition. Leroy Mickens received a Chapter 7 discharge on April 8, 1996. Thereafter, the Credit Union initiated collection efforts against Mary Terrill. To resolve the collection action, Ms. Terrill requested that the Credit Union permit her to sign a new obligation and was informed that she would need a cosigner.

The parties' accounts of the facts differ as to whether employees of the Credit Union actively encouraged or merely facilitated Debtor's cosigning a new obligation for the discharged debt. Debtor alleges that Kevin Lounsbury and Robert W. Tyson, employees of Credit Union, insisted to Mary Terrill that, in order to relieve her of the burden of the collection effort by refinancing the indebtedness, a new note must be cosigned by Debtor and his wife. By contrast Lounsbury and Tyson state that, when contacted by Terrill, Tyson advised her that she would be

---

1. (a) A discharge in a case under this title—

    . . . .

    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

2. Richie Mickens is Debtor's wife. Mary Terrill is a friend of the Mickens and lives in Charlottesville, Virginia. She cosigned the Credit Union note because the Credit Union required that the Mickens provide a cosigner.

required to provide either collateral or a qualified cosigner in order to refinance the debt because she was unemployed at the time. Tyson further advised Terrill that she could apply in person and, if the application were approved, the debt could be refinanced. He denies ever suggesting that Debtor or Richie' Mickens cosign the new note.

On March 28, 1997, the Credit Union received, processed, and approved an application by Terrill, the Debtor, and Richie' Mickens. The Credit Union emphasizes the fact that Terrill, Debtor, and Richie' Mickens voluntarily came to its place of business and voluntarily signed the new note and that Debtor and Richie' Mickens voluntarily signed the Notice to Cosigner. Lounsbury and Tyson insist they put no pressure on Debtor and his act of cosigning was voluntary. Debtor alleges he felt he had no option but to sign the new note.

### Law and Discussion:

A. Violation of § 524(a)(2).

██ 11 U.S.C. § 524(a)(2) imposes an injunction after the issuance of the discharge order "against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as personal liability of the debtor, whether or not discharge of such debt is waived." Therefore, the resolution of this case does not depend upon the Debtor's awareness of his rights or whether the Credit Union insisted upon Debtor cosigning the note. The issue is whether the fact that the Credit Union obtained a new note signed by the Debtor for his discharged obligation constitutes "an act, to collect, recover, or offset" the discharged debt in violation of the discharge injunction.

In order to determine whether the discharge injunction contained in § 524(a)(2) was violated by the Credit Union, the Court must determine whether the Credit Union's actions constituted "an act" which is prohibited. Although the Bankruptcy Code does not define "an act", Congressional intent is revealed in the legislative history:

Subsection (a) specifies that a discharge in a bankruptcy case ... operates as an injunction against the . commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters, and personal contacts, to collect, recover, or offset any discharged debt as a personal liability of the debtor ... whether or not the debtor has waived discharge of the debt involved. The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This paragraph has been expanded over a comparable provision in Bankruptcy Act § 14f to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like. The change ... is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that. S.Rep. No. 95–989, at 80 (1978).

From this passage, it appears clear that Congress intended a broad, if not catch-all, definition of "an act."

Case law defining "an act" for the purposes of § 524(a)(2) is limited. *Matter of Holland,* 21 B.R. 681 (Bankr.N.D.Ind.1982), provides the most guidance. In *Holland,* the debtor sought to have a creditor held in contempt of court for continuing to operate post-petition under a pre-petition payroll deduction agreement and refusing to disgorge post-petition deductions after the debtor received a discharge. The creditor did not provide the form necessary to stop the payroll deduction when the debtor notified the creditor of the filing of the petition, and the creditor continued to make the deductions from a savings account. *Id.* at 683–684. The court concentrated on the phrase "any act" from § 362(a)(6). It noted that the same behavior which constituted a violation of the automatic stay also was an act in violation of the discharge injunction. *Id.* at 688. The *Holland* court also looked to Webster's *New Collegiate Dictionary* to define only the word

"act" as "a thing done." [3] *Id.* at 687. However, the *Holland* court went even farther in acknowledging the broad language of the Code by noting that "*inactivity* on the part of a creditor with notice of the bankruptcy which permits the forces of collection to go forward is as offensive to the automatic stay provision as is activity." *Id.* at 688 (emphasis added) *citing In re Dohm,* 14 B.R. 701 (Bankr.N.D.Ill.1981); *In re Elder,* 12 B.R. 491 (Bankr.M.D.Ga.1981); *In the Matter of Dennis,* 17 B.R. 558 (Bankr.M.D.Ga.1982).

In this case, the Credit Union's act, permitting Debtor to cosign the new note, expressly placed Debtor in the same state of personal liability for the exact debt which was discharged. The Notice to Cosigner states this fact.

> If the borrower doesn't pay this debt, you will have to.... You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection cost, which increase this amount.

> The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may be-

come a part of *your* credit record. Debtor's Motion, Appendix B.

Section 524(c) lays out detailed requirements which must be met for a debtor to reaffirm a pre-petition debt and thereby remain obligated to pay such a debt in spite of the discharge injunction.[4] That section applies by its terms to "[a]n agreement between a holder of a claim and the debtor, the consideration for which ... is based on a debt that is dischargeable in a case under this title...." 11 U.S.C. § 524(c). If special procedures (reaffirmation) must be followed to allow an act (the creation of an agreement where a dischargeable debt serves as consideration) in spite of the discharge injunction, then, the act must be one which is subject to the discharge injunction of § 524(a)(2).[5] It seems clear that Credit Union's actions would be subject to § 524(c). Therefore, they must fall within the definition of "an act" for the purposes of the discharge injunction, however narrowly that phrase may be defined. There can be little doubt this was "an act, to collect, recover or offset" the discharged debt "as a personal liability of the debtor." [6]

While no cases with identical facts are readily apparent, the cases which most closely resemble the fact pattern for this case are those which involve "clumsy attempts to avoid the injunction." [7] David G. Epstein,

---

**3.** More recently, "act" has been defined in Black's Law Dictionary 25 (6th ed.1990) as "[d]enotes external manifestation of actor's will." Restatement, Second, Torts § 2 ... In its most general sense, this noun signifies something done voluntarily by a person ... In a more technical sense, it means something done voluntarily by a person, and of such a nature that certain legal consequences attach to it.

**4.** (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if ...

**5.** Section 524(a)(2) and (c) are *in pari materia* and should be read as complimentary. *In re Briggs,* 143 B.R. 438, 446 n. 9 (Bankr.E.D.Mich. 1992).

**6.** Far less blatant commissions or omissions have been found to constitute acts to collect a discharged debt by other courts. *See In re Roush,*

88 B.R. 163 (Bankr.S.D.Ohio 1988) (holding creditor who failed to maintain procedures adequate to prevent its employees or agents from attempting to collect discharged debt was in civil contempt of discharge injunction); *In re Olson,* 38 B.R. 515 (Bankr.N.D.Iowa 1984) (conditioning future medical service upon repayment of pre-petition debt is a violation of § 524(a)(2)).

**7.** *See Smurzynski v. General Finance Corporation,* 72 B.R. 368 (Bankr.N.D.Ill.1987) (finding allegations that a lender was attempting to collect on a discharged debt by requiring the debtor to acknowledge total indebtedness in excess of money actually received in a new transaction sufficient to state a cause of action for violation of the discharge injunction); *In re Esposito,* 119 B.R. 305 (Bankr.M.D.Fla.1990) (finding unsecured creditor, who told debtors it would reinstate previous business relationship if they paid $8,000 toward discharged debt and failed to do so after debtors paid the $8,000, guilty of civil contempt); *In re Latanowich,* 207 B.R. 326 (Bankr.D.Mass. 1997) (finding creditor who induced debtor to sign "reaffirmation agreement" and never filed

Steve H. Nickles, & James J. White, Bankruptcy § 7–36 (1993). In these cases, the creditors' attempt to circumvent the requirements of § 524(c) and (d) through a reliance on the voluntary repayment provision in § 524(f). Several themes consistently emerge from each of these cases. "In enacting these reaffirmation rules, Congress attempted to preserve the fresh start goal of the bankruptcy laws and insure that 'voluntary' reaffirmation agreements were truly voluntary." *In re Gardner,* 57 B.R. 609, 611 (Bankr.D.Me.1986) (citations omitted). *See In re Latanowich,* 207 B.R. 326, 334 (Bankr. D.Mass.1997); *Liberty Nat'l Bank and Trust Co. v. Payton,* 602 N.E.2d 530, 533 (Ind.Ct. App.1992). " § 524(c) and (d), except under very limited circumstances, make reaffirmation agreements based on dischargeable debts unenforceable." *Payton,* 602 N.E.2d at 533. *See Van Meter v. American State Bank,* 89 B.R. 32, 34 (W.D.Ark.1988). "These requirements are mandatory; and, as they exist to protect a debtor from his or her own bad judgment, the debtor cannot waive them." *In re Latanowich,* 207 B.R. at 335. "Because of the danger that creditors may coerce debtors into undesirable reaffirmation agreements, the language of section 524(c) must be strictly construed." *In re Gardner,* 57 B.R. at 611 (citations omitted). *See Payton,* 602 N.E.2d at 533. The voluntary repayment provision of § 524(f) provides no defense under these circumstances.[8] "[T]he provisions of § 524(f) do not validate repayments of discharged debts that are in any manner induced by the acts of the creditor." *Van Meter,* 89 B.R. at 34 (footnote omitted). "No transaction that leaves a debtor obligated to pay, or believing that he or she is obligated to pay any part of a discharged debt can be characterized as voluntary repayment within the meaning of section 524(f)." *In re Bowling,* 116 B.R. 659, 664

(Bankr.S.D.Ind.1990), *See In re Latanowich,* 207 B.R. at 336. "Lack of ... pressure, however, makes no difference here. The agreement must comply with Section 524(c) to be enforceable." *In re Gardner,* 57 B.R. at 611.

In this case, the Credit Union cannot make any serious argument its actions or new note even attempt to comply with the requirements of § 524(c) and (d). However, it appears from Credit Union's emphasis on the voluntary nature of Debtor's act that Credit Union hopes for a § 524(f) defense. Clearly, allowing a debtor to sign a note which places him under the same obligation which he was subject to pre-discharge does not constitute a voluntary repayment by the debtor nor does it leave the debtor in position to make a voluntary repayment under § 524(f).

**B.** Sanctions for violation of 11 U.S.C. § 524(a)(2).

"Violation of the injunction is punishable by contempt." *Matter of Holland,* 21 B.R. at 689 (citations omitted). "It has long been recognized and it is elementary that a willful and knowing violation of a valid order of a Court which has jurisdiction of the subject matter is civil contempt...." *In re Esposito,* 119 B.R. 305, 307 (Bankr.M.D.Fla. 1990.) "[S]everal courts ... have held that a bankruptcy court not only has an inherent power to find one in civil contempt, but has such power by virtue of § 105 of the Bankruptcy Code."[9] *Id.* (citations omitted). *See In re Walters,* 868 F.2d 665 (4th Cir.1989); *In re Hardy,* 97 F.3d 1384 (11th Cir.1996). In addition, "Bankruptcy Rule 9020 adopted by the Supreme Court and approved by Congress expressly sets forth the procedure for dealing with civil contempt in the bankruptcy court...."[10] *Id.* For civil contempt, the debt-

---

such agreement, nor ever intended to in civil and criminal contempt).

**8.** (f) Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt.

**9.** 11 U.S.C. § 105
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

**10.** Rule 9020

....

(b) *Other Contempt.* Contempt committed in a case or proceeding pending before a bankruptcy judge ... may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil ...

or is entitled to be compensated for all expenses, including attorney's fees, "incurred in finally securing the benefit of his discharge." *In re Latanowich,* 207 B.R. at 337.

Courts also read § 105 "as authorizing punitive sanctions, which are simply another mechanism by which the court enforces its orders." *Id.* at 333 (citations omitted). "Punitive sanctions, though imposed as punishment after the fact, nonetheless enforce court orders by their very availability and the threat of their imposition for violations of such orders." *Id.* "Moreover ... the weight of authority from other circuits now recognizes that the bankruptcy court has authority to enforce its own orders in core proceedings by the power of both civil and criminal contempt." *Id.* (footnotes omitted). "A proceeding to enforce the discharge is a core proceeding." *Id.* at 332 (citations omitted).

■ In this case, there can be no doubt Credit Union was aware of the injunction and intentionally permitted and facilitated Debtor's signing a new note which returned him to his pre-petition position of personal liability for the pre-petition debt. Such action constitutes a willful violation of the post-discharge injunction of § 524(a)(2).

C. Damages.

Debtor provided no evidence of his damages or the attorney's fees incurred in connection with this effort to stop the violation of the discharge order. Accordingly, it is

### ORDERED:

That, Waynesboro Dupont Employees Credit Union, Inc. be, and it hereby is found in **VIOLATION** of the discharge injunction imposed by 11 U.S.C. § 524(a)(2). The liability of Leroy Mickens, Jr. on the note he cosigned for Mary Terrill is **VOID** *ab initio.* Further, the Credit Union is **LIABLE** to Leroy Mickens, Jr. for damages, attorney's fees, and costs. It is

### FURTHER ORDERED:

That Debtor shall, within twenty (20) days from the date of the entry of this order file with the Court an affidavit of damages sustained and attorney's fees and costs incurred,

the latter to be in the form customarily presented in connection with applications for compensation of counsel, and any request for punitive damages if he believes such damages are appropriate. Thereafter, Credit Union shall have fifteen (15) days to file any response to the itemized damages and attorney's fees and costs as well as any response to any request for punitive damages.

Copies of this order are directed to be mailed to David I. McCaskey, Esquire, 24 W. Beverley Street, P.O. Box 1134, Staunton, Virginia 24402–1134, counsel to Debtor; and to Charles L. Ricketts, III, Allen & Carwile, P.C., P.O. Drawer 1558, Waynesboro, Virginia 22980, counsel to Credit Union.