**In re Dale A. PAGLIA, Debtor.**

**Dale A. Paglia, Plaintiff,**

v.

**Sky Bank, Defendant.**

**Bankruptcy No. 91–24665BM.**
**Adversary No. 02–2289BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 18, 2003.

Thomas A. Dill, Fruit, Fill, Goodwin & Scholl, Sharon, PA, for Plaintiff.

Richard J. Parks, MacDonald, Illig, Jones & Britton, LLP, Erie, PA, for Defendant.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor Dale Paglia asserts in this adversary action that defendant Sky Bank violated 11 U.S.C. §§ 524(a)(2) and 362(a)(6) and 15 U.S.C. § 1691 when, during his bankruptcy case, its predecessor coerced him to execute a promissory note in its favor in connection with a discharged prepetition debt on which he had defaulted. In addition to recovering with interest the payments he made pursuant to the note, debtor seeks to recover compensatory and punitive damages, attorney's fees and costs.

Defendant denies that its conduct violated any of these statutory provisions.

We agree with defendant and conclude for reasons set forth in this memorandum opinion that defendant violated none of these provisions and consequently will enter judgment in its favor and against debtor.

### — FACTS —

Debtor was the sole principal of a business known as F & M Fabricators until it ceased operating some time in 1990.

On January 24, 1990, debtor borrowed the sum of $13,000.00 from First National Bank of Western Pennsylvania, defendant's predecessor, for use in his business. He executed and delivered that same day a promissory note in favor of First National in the amount of $13,000.00 plus interest. The total amount due under the note, which was payable in full by March 31, 1990, was $13,282.08.

Irene Paglia, debtor's mother, did not execute the promissory note but pledged her interest in an annuity to secure payment of debtor's obligation. She executed an assignment of her interest in the annuity to First National on January 24, 1990.

Debtor ultimately defaulted on his obligation to First National arising under the promissory note of January 24, 1990.

Debtor filed a voluntary chapter 7 petition on September 19, 1991. First National was identified on the schedules as having an undisputed general unsecured claim in the amount of $12,544.97 for a "loan obtained on behalf of employer on January 24, 1990".

First National sent a letter to Irene Paglia on November 15, 1991, informing her that debtor had defaulted on the above promissory note and demanding payment from her in the amount of $13,484.63. It further demanded that she liquidate the annuity she had pledged as security for debtor's obligation and use the proceeds to satisfy debtor's unpaid obligation. Legal action was threatened if the matter was not fully resolved by November 29, 1991.

On January 10, 1992, before debtor had received a discharge in his ongoing bankruptcy case, debtor executed a second promissory note in favor of First National in the amount of $13,635.00 plus interest. The total amount due under the note, which was payable in 108 monthly installments beginning on February 1, 1992, was $21,134.52.

As security for this new obligation, Irene Paglia once again pledged her interest in the annuity on January 10, 1992, and executed another assignment of her interest in the annuity to First National.

Debtor received a discharge of all his pre-petition obligations on April 16, 1992. Included among the discharged obligations was the debt arising out of the promissory note debtor had executed on January 24, 1990. His bankruptcy case was closed on April 23, 1992.

On November 16, 1998, more than six years after debtor had received a discharge and nearly seven years after debtor had executed the second promissory note, *Irene* Paglia's attorney sent a letter to First National. Among other things, her attorney maintained that the second promissory note was a reaffirmation agreement which was "void" because it had not been filed with and approved by the bankruptcy court.

Debtor continued making monthly payments due under the second promissory note until March of 1999. The amount of the payments, including interest, he made to First National during this period totaled $23,119.82. No further payments were made after March of 1999.

On May 20, 2002, more than ten years after he had executed the second promissory note, debtor commenced this adversary action against Sky Bank, successor to First National. The complaint alleges, among other things, that First National had violated the discharge injunction—found at § 524(a)(2) of the Bankruptcy Code—as well as the automatic stay—found at § 362(a)—when it coerced him to execute the second promissory note. In addition, the complaint asserts that First National's conduct violated 15 U.S.C. § 1691.

Almost five months later, on October 25, 2002, debtor brought a motion to reopen his closed bankruptcy case so the adversary action could be heard and decided in this court. The motion was granted on December 3, 2002.

The matter was tried on July 21, 2002, at which time both sides were given an opportunity to call witnesses and to offer evidence on the issues in the case.

— DISCUSSION —

Debtor maintains that First National coerced him to execute the second promissory on January 10, 1992. The primary thrust of his case is that defendant's conduct violated § 524(a)(2) of the Bankruptcy Code, which provides in part as follows:

(a) A discharge in a case under this title—. . . .

> (2) operates as an injunction against . . . an act, to collect . . . any . . .[d]ischarged debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a)(2).

 With certain exceptions not relevant here, the discharge of a pre-petition debt owed by a debtor in bankruptcy does not affect the liability of any other entity or their property for that debt. 11 U.S.C. § 524(e). Furthermore, a debtor is not prohibited from voluntarily repaying any debt. 11 U.S.C. § 524(f).

 Unless a specific debt is expressly excepted, a debtor in bankruptcy is relieved of personal liability for all pre-petition debts upon receiving a discharge. *See Johnson v. Home State Bank*, 501 U.S. 78, 82–83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991). Where a creditor has a security interest in property, a discharge extinguishes only the personal liability of the debtor in bankruptcy. The right of a secured creditor to proceed *in rem* against the collateral survives the debtor's discharge. *Id.*

 The purpose of § 524(a) is to afford a debtor a "fresh start" by ensuring that a debtor will not be pressured in any way to repay a debt after it has been discharged. *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 182 (Bankr.E.D.Va.2000).

Debtor cites to *Mickens v. Waynesboro Dupont Employees Credit Union (In re Mickens)*, 229 B.R. 114 (Bankr.W.D.Va. 1999), as support for the proposition that defendant in this case violated § 524(a)(2) by coercing him into executing the second promissory note. We must decline the invitation to follow *Mickens* and conclude in light of the evidence presented in this case that defendant's conduct did *not* amount to a violation of § 524(a)(2).

In *Mickens,* debtor, his wife and a third person executed a promissory note in favor of defendant credit union. Debtor filed a chapter 7 petition some nineteen months later and received a general discharge approximately five months thereafter. *Id.,* 229 B.R. at 115. Neither debtor's wife nor the third person filed a bankruptcy petition. Whereas debtor's personal liability arising under the note was discharged, debtor's wife and a third person remained personally liable for the unpaid amount of the note.

After debtor received a discharge and his bankruptcy case was closed, the credit union undertook to collect the unpaid amount of the note from the third person. In an attempt to resolve the matter, the third person proposed to the credit union that she execute another promissory note. Approximately one year after debtor had received a discharge, the credit union received, processed and accepted a loan application submitted by debtor, his wife and the third person, all of whom were obligated under the first note. *Id.,* 229 B.R. at 115–16. The circumstances in *Mickens* leading to the debtor's execution of the second note are not apparent.

The debtor in *Mickens* thereafter experienced a change of heart and brought a motion in the bankruptcy court alleging that the credit union had violated § 524(a)(2) and sought injunctive relief. The bankruptcy court concluded that the credit union had violated the postdischarge injunction and therefore was liable to debtor for monetary damages, attorney's fees and costs. 229 B.R. at 115. In so doing, the court in *Mickens* went beyond the relief sought by debtor when it awarded compensatory damages.

The Bankruptcy Code nowhere defines what constitutes an "act to collect" for

purposes of § 524(a)(2). *Mickens* concluded there was "little doubt" that the conduct of the credit union was "an *act* to collect, recover or offset" the discharged debt previously owed by debtor "as a personal liability of the debtor". *Id.,* 229 B.R. at 115. Reconstructing how it arrived at this conclusion reveals its untenability.

Certain "clues" in *Mickens* indicate that the credit union may not have *actively* done anything to collect the discharged debt from debtor. The court thought it unnecessary to determine whether the credit union "actively encouraged" or "merely facilitated" debtor's signing of a new note for the previously discharged pre-petition debt before determining whether it engaged in "an act to collect" for purposes of § 524(a)(2). *Id.,* 229 B.R. at 115–16. How active, if at all, the credit union was in this regard evidently was not deemed relevant.

*Mickens* approvingly cited to *Matter of Holland,* 21 B.R. 681, 687–88 (Bankr. N.D.Ind.1982), which stated that "*inactivi-ty* on the part of a creditor with notice of the bankruptcy which permits the forces of collection to go forward is as offensive to the automatic stay provision as is activity". Immediately thereafter, *Mickens* asserted that the conduct of merely *permitting* a debtor to co-sign the new note placed the debtor in the same state of personal liability for the debt that previously was discharged. 229 B.R. at 116. According to *Mickens,* a creditor violates § 524(a)(2) merely by passively permitting a debtor to execute a new note with respect to a debt that was previously discharged.

■ This indication explains the court's previously-noted observation that there was no need to determine whether the credit union "actively encouraged" or "merely facilitated" debtor's co-signing of the new note. It also explains why *Mick-ens* thought there was "little doubt" the credit union committed an "act to collect" for purposes of § 524(a)(2). Merely permitting a debtor to execute to execute a new note which makes the debtor personally liable for a discharged debt, *Mickens* concluded, suffices for there to be an "act to collect" for purposes of this provision of the Bankruptcy Code.

We take issue with this reasoning because it postulates what effectively amounts to a *per se* principle of law that a creditor violates § 524(a)(2) merely by passively permitting a debtor to execute another note and thereby to become personally liable once again for a discharged debt. A creditor, in other words, violates § 524(a)(2), without regard for how active or passive it was prior to debtor's execution of another note and without regard to whether it actively sought to collect the discharged debt. Such a *per se* principle drains the phrase "act to collect" of all content and effectively renders it vacuous.[1] It is difficult, if not impossible, utilizing this principle to conceive of a situation in which a creditor that passively permits a debtor to become liable once again for a discharged debt has not violated § 524(a)(2).

■ Turning to the case now before us, nothing in the evidence presented at trial suffices to warrant the inference that defendant undertook in any way to collect a soon-to-be discharged debt from debtor or that it even advised him that he *had* to

---

1. This is *not* to say that inactivity on the part of a creditor can never constitute an "act to collect". We can envision situations in which inactivity on a creditor's part could so qualify. It is only to say that inactivity on a creditor's part need not do so. Whether it does depends on the particular facts and circumstances present in a specific case and cannot be determined *a priori.*

execute the second note. To the contrary, the evidence indicates that, acting out of filial loyalty, defendant himself took the initiative and volunteered to execute the second note so defendant would not take legal action against his mother's annuity. Defendant was not willing to let this happen.

The most that can be said of defendant is that it accepted debtor's offer to execute the second note. Standing alone, this is a far cry from concluding that it undertook or acted to collect the debt from debtor. Debtor's contention that defendant coerced him into executing the second note is without merit.

Debtor's execution of the second note was preceded by defendant's threat to take legal action against the annuity belonging to debtor's mother which she had pledged as security for the first obligation. Without more, such a threat was not a violation of the discharge injunction. *See* 11 U.S.C. § 547(e); *In re Market Square Inn,* 163 B.R. 64, 66 (Bankr.W.D.Pa.1994). Her annuity was "fair game" for defendant to pursue because it served to secure the obligation arising under the first promissory note. *Home State Bank,* 501 U.S. at 82–83, 111 S.Ct. at 2153.

There is no credible evidence to warrant the inference that defendant's threat to take legal action against the annuity belonging to debtor's mother was a devious stratagem on its part to get debtor to agree to pay his discharged obligation. Defendant apparently believed that the annuity was of sufficient value to pay in full debtor's obligation arising under the first note and had no need to resort to such devious conduct.

We conclude in light of the foregoing that defendant's conduct, as described above, was *not* in violation of § 524(a)(2).

 Were the second note debtor executed on January 10, 1992, a "reaffirmation agreement" for purposes of §§ 524(c) and (d) of the Bankruptcy Code, the note would not be enforceable due to the absence of compliance with the requirements set forth in these provisions. The second note, which was not filed with the court, did not advise debtor that he could rescind it within a specified period of time, and did not advise him that he did not have to execute it. See 11 U.S.C. §§ 524(c), (d).

The obligation arising under the second note unquestionably bore a relationship to the first. The second note, however, was *not* a reaffirmation for purposes of these provisions of the debt arising under the first note. Debtor instead incurred a *different* obligation in return for *different* consideration. As consideration for the first note, debtor received money from defendant. As consideration for the second note, defendant agreed to forego its lawful right to take action against the annuity pledged by debtor's mother which secured repayment of the obligation arising under the first note.

While he did not actively pursue it trial, debtor asserted in his complaint that defendant's conduct also violated the automatic stay provision of the Bankruptcy Code as well as 15 U.S.C. § 1691. Defendant violated neither of these provisions.

 Although he did not specifically identify which portion of § 362(a) defendant allegedly violated, the most likely candidate is § 362(a)(6), which provides in part as follows:

(a) ...[A] petition filed under section 301 ... of this title ... operates as a stay, applicable to all entities, of—....

(6) any act to collect ... a claim against a debtor that arose before the

commencement of the case under this title.

11 U.S.C. § 362(a)(6).

The phrase "act to collect" appears in § 362(a)(6) as well as in § 524(a)(2). As we understand it, debtor maintains that the same conduct of defendant which amounted to an "act to collect" for purposes of § 524(a)(2) also amounts to an "act to collect" for purposes of § 362(a)(6). According to debtor, defendant committed an "act to collect" a pre-petition debt owed to it by debtor and thus violated the automatic stay when it threatened to take action against his mother's annuity and then permitted debtor to execute the second promissory note while his bankruptcy case was still ongoing.

This assertion is without merit for reasons stated previously The reasoning underlying our previous determination that defendant did not commit an "act to collect" for purposes of § 524(a)(2) applies *pari passu* with respect to the same phrase for purposes of § 362(a)(6). Defendant therefore did *not* violate the automatic stay by undertaking an act to collect a pre-petition claim against debtor when it threatened to take legal action against the annuity belonging to debtor's mother and then instead permitted debtor to execute the second promissory note as an alternative.

Finally, we fail to see the relevance of 15 U.S.C. § 1691 to this case. It provides in part as follows:

(a) It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);

(2) because all or part of the applicant's income derives from any public assistance program; or

(3) because the applicant has in good faith exercised any right under this chapter.

The thrust of debtor's case concerns a second promissory note defendant allegedly coerced him into executing during his bankruptcy case and prior to receiving a discharge. It has nothing to do with any discrimination against debtor with respect to a credit application for any of the reasons set forth above. Debtor has not made clear how this provision is supposed to apply to the present case.