In re Jesus Chaide RAMIREZ and Lisa Denise Ramirez, Joint Debtors.

Jesus Chaide Ramirez, On Behalf Of Himself And All Others Similarly Situated, Plaintiff,

v.

General Motors Acceptance Corporation, Defendant.

Bankruptcy No. LA 97–53708 TD.

Adversary No. 00–02990 TD.

United States Bankruptcy Court, C.D. California.

Jan. 28, 2002.

Timothy J. Becker, Zimmerman Reed, P.L.L.P., Minneapolis, MN, for Plaintiff.

Lawrence J. Fallon, Severson & Werson, San Francisco, CA, for Defendant.

## MEMORANDUM OF DECISION AFTER TRIAL

THOMAS B. DONOVAN, Bankruptcy Judge.

## INTRODUCTION

The Honorable A. Howard Matz of the United States District Court for the Central District of California referred six bankruptcy issues to this court for resolution in connection with a district court class action suit pending before Judge Matz. The class action suit was brought by Jesus Chaide Ramirez against General Motors Acceptance Corporation (GMAC). I have jurisdiction over the issues referred to me pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a) and (b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). The issues referred to me were assigned an adversary number. The parties conducted pre-trial discovery and appeared at several pre-trial status conference hearings and on cross-motions for summary judgment which were denied. After this extensive pre-trial activity by the parties, the referred issues were set for trial. After trial, I considered the evidence and the argument of counsel. This memorandum sets forth my findings of fact and conclusions of law.

## BACKGROUND

On January 27, 1993, Mr. Ramirez and his wife at the time, Lisa Denise Ramirez, purchased a new 1993 Chevrolet van from Leo Hoffman Chevrolet. GMAC provided Mr. and Mrs. Ramirez with financing for their purchase and retained a security interest in the van. Under the terms of the financing agreement, Mr. and Mrs. Ramirez were obliged to make 72 monthly payments of $461.31 to GMAC. Between June 1996 and October 1997, the financing agreement was modified three times by written agreements between Mr. Ramirez and GMAC to accommodate Mr. Ramirez' financial difficulties. These modifications extended the final payoff date on the 1993 financing agreement.

On November 13, 1997, Mr. and Mrs. Ramirez sought relief from their financial difficulties through a voluntary chapter 7 bankruptcy petition. In their bankruptcy case, Mr. and Mrs. Ramirez were represented by attorney Edward E. Rios. After being counseled by Mr. Rios, it was Mr. Ramirez' understanding that if he wanted to keep the van, he would have to complete his installment payments to GMAC (Ramirez Depo. 46:3–7), and Mr. Ramirez also believed that if he failed to make the monthly payments, GMAC could repossess the van and might hold him personally responsible for additional amounts (Ramirez Depo. 46:8–16).

Prior to the time Mr. and Mrs. Ramirez filed their chapter 7 bankruptcy petition, GMAC sent monthly statements to Mr. Ramirez. GMAC received notice on November 21, 1997, that Mr. and Mrs. Ramirez filed for bankruptcy relief, alerting GMAC to the automatic stay contained in 11 U.S.C. § 362. During the automatic stay period, GMAC sent no monthly statements to Mr. Ramirez; there were no verbal or written discussions between Mr. Ramirez and GMAC (Ramirez Depo.

39:24–40:14); but Mr. Ramirez sent his regular monthly payments to GMAC. While Mr. Ramirez listed the debt to GMAC on his Schedule D and stated his intention to reaffirm his vehicle debt in his Chapter 7 Individual Debtor's Statement of Intention, no reaffirmation agreement existed between Mr. Ramirez and GMAC (Ramirez Depo. 39:24–40:14).

On February 24, 1998, Mr. and Mrs. Ramirez received a discharge of their prepetition debt pursuant to 11 U.S.C. § 727. After the discharge order was entered, GMAC resumed sending regular monthly billing statements to Mr. Ramirez (Ramirez Depo. 50:23–5). Most of the billing statements GMAC sent to Mr. Ramirez from March 1998 through October 1998 were identical to those Mr. Ramirez received prior to filing for bankruptcy relief. In April, November, and December 1998, GMAC sent Mr. Ramirez a billing statement that contained a new heading: "TRANSACTION SUMMARY OF VOLUNTARY PAYMENTS MADE," and also contained a new comment: "VOLUNTARY PAYMENTS MUST BE TIMELY RECEIVED BY GMAC IF YOU WISH TO RETAIN POSSESSION OF YOUR VEHICLE" (Ramirez Depo. Ex. 11 and Trial Exs. 6e, 6f). As GMAC's witness testified at his deposition, GMAC sent statements "to facilitate payment," "to encourage payments" (Hamilton Depo. 50:5–52:13).

On April 16, 1999, Mr. Ramirez wrote to GMAC to inquire as to why the statements changed from what he referred to as the "regular statements" to the new "transaction summary of voluntary payment." The letter was received by GMAC (Trial Ex. 2), but Mr. Ramirez did not receive a response from GMAC.

From March 1998 through June 1999, Mr. Ramirez made 16 payments to GMAC totaling $7,158.75 (Trial Ex. 1). Mr. Ramirez made the payments in order to keep the van and to ensure his means to get to work. On June 2, 1999, Mr. Ramirez tendered his final payment under the GMAC financing agreement, and shortly after Mr. Ramirez received from GMAC a statement showing that GMAC had been paid in full for the van.

On July 30, 1999, Mr. Ramirez initiated his class action suit against GMAC by his complaint in the district court. Mr. and Mrs. Ramirez were divorced from each other in 2000. Mr. Ramirez' former wife is not a party to this dispute.

## ISSUES

The six bankruptcy issues referred to me by Judge Matz include: (1) Whether defendant's collection activities violated the automatic stay provisions of 11 U.S.C. § 362; (2) Whether defendant's collection activities violated 11 U.S.C. § 524(a)(2) and the related bankruptcy discharge order obtained by Mr. Ramirez in 1998; (3) Whether defendant deliberately circumvented 11 U.S.C. § 524(c) by failing to take reasonable steps to seek reaffirmation of Mr. Ramirez' prepetition debt; (4) Whether defendant's actions constitute civil contempt for violations of the automatic stay under 11 U.S.C. § 362 and § 524(a)(2) and the related bankruptcy discharge; (5) Whether defendant violated any other provisions of the Bankruptcy Code; and (6) Whether defendant is liable to plaintiffs for any damages, sanctions, and costs associated with violations of the Bankruptcy Code and, if so, the amount of such liability.

At trial Mr. Ramirez abandoned four of the six issues and limited his claims to the questions of whether GMAC violated § 524(a)(2) and, if so, the damages that should be awarded for such a violation. Thus, the issues that I need to decide in this litigation are whether GMAC, in send-

ing Mr. Ramirez monthly billing statements post-discharge, violated the discharge injunction contained in 11 U.S.C. § 524(a)(2) and, if so, the manner in which and the extent to which GMAC should be held accountable.

## DISCUSSION

Under Ninth Circuit authority, the only basis for recovery by Mr. Ramirez lies in a citation for contempt pursuant to 11 U.S.C. § 105(a).

■ On January 8, 2002, the Ninth Circuit, in *Walls v. Wells Fargo Bank*, 276 F.3d 502 (2002), issued its decision in a case involving somewhat similar claims. In *Walls*, the district court concluded that the remedy Congress intended for violation of the discharge injunction is contempt pursuant to 11 U.S.C. § 105(a). The district court referred Walls' claims for contempt to the bankruptcy court but dismissed her claims for relief under § 524. The Ninth Circuit affirmed, concluding that Congress did not intend to create a private right of action under § 524 or through § 105. The Ninth Circuit also declined to imply such a right. The district court in *Walls* also granted the defendant's motion to dismiss a claim brought under the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692f. In its decision affirming the order of the district court, the Ninth Circuit approved the lower court's dismissal of the FDCPA claim as well, concluding that to allow such a claim "would circumvent the Bankruptcy Code's remedial scheme."

Mr. Ramirez has not proven, pursuant to § 524(a)(2), that GMAC has violated the discharge injunction.

■ The discharge injunction is contained in 11 U.S.C. § 524(a)(2) which states:

A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a)(2).

Mr. Ramirez asserts that because GMAC sent him monthly billing statements after he received his discharge, and because GMAC's billing statements sought to compel and collect payment on a debt, GMAC violated § 524(a)(2). GMAC's position is that the billing statements did not constitute an attempt to enforce personal liability against Mr. Ramirez or, in the language of the statute, "to collect any such debt as a personal liability" of Mr. Ramirez.

The only post-discharge contact GMAC initiated with Mr. Ramirez regarding his obligations to GMAC consisted of the series of mailed monthly billing statements referred to above. Though post-discharge GMAC utilized two different statement formats, initially using the same format that GMAC had used pre-discharge (Trial Exs. 6a–6d), in April, November, and December 1998, the monthly billing statements contained the heading "TRANSACTION SUMMARIES OF VOLUNTARY PAYMENTS MADE" (Ramirez Depo. Ex. 11 and Trial Exs. 6e, 6f). This evidence is insufficient to support a finding that GMAC sent any post-discharge statement to harass Mr. Ramirez or to threaten him in any way. There is nothing in either of the post-discharge statement formats used to bill Mr. Ramirez to suggest to Mr. Ramirez that GMAC asserted or believed that Mr. Ramirez was personally liable to make any further payment to GMAC. Mr. Ramirez acknowledged that at the time he received the post-discharge statements from GMAC, none of the statements

changed his understanding of his responsibilities which was, first, that he had to pay if he wanted to keep the van, and, second, that if he didn't pay, GMAC would repossess the van and he might be responsible for additional amounts. The GMAC statements, instead, amounted to nothing more than an informative courtesy, suggesting that if Mr. Ramirez wished to keep the van, he would have to meet his monthly payment obligation to GMAC.

Though Mr. Ramirez believed that if he failed to make all his monthly payments GMAC could repossess the van and possibly hold him personally responsible for additional amounts, Mr. Ramirez failed to prove by a preponderance of the evidence that this belief on his part was the product of wrongdoing on GMAC's part. The evidence supports the contrary conclusion, that is, that Mr. Ramirez' understanding was rooted in his discussions with Mr. Rios, his bankruptcy counsel. To hold GMAC responsible for Mr. Ramirez' understanding would be unjustified here. Such a result would envision requiring creditors to educate debtors and, further, to ensure that debtors fully understand their responsibilities at every stage of the creditor-debtor relationship. Such a burden is neither mandated nor envisioned by the Bankruptcy Code, and, thus, is a burden that I decline to impose upon GMAC based on the evidence in this matter. Mr. Ramirez' evidence does not establish that GMAC violated § 524(a)(2) or should be held accountable for contempt under § 105(a).

I reject Mr. Ramirez' interpretation of the evidence in favor of adopting an interpretation of the evidence before me that I believe is more sensible. In sending Mr. Ramirez monthly statements, I do not believe that GMAC violated the plain language of § 524(a)(2). I conclude, rather, that, GMAC's post-discharge statements were nothing more than a practical and lawful means to alert Mr. Ramirez to his monthly payment obligations if he wished to retain possession of the van. I also conclude that Mr. Ramirez sent his payments to GMAC voluntarily in order to retain possession of the van.

It would not be fair, just, or correct to conclude that creditors, such as GMAC, violate § 524(a)(2) by sending either type of post-discharge billing statement used in this case by GMAC. Moreover, 11 U.S.C. § 524(f) provides: "Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt." In light of the facts of this case, and after considering the straightforward words of § 524(f), a more sensible conclusion would be that sending monthly statements to debtors who, as in Mr. Ramirez' case, may wish to keep their vehicles post-discharge is a businesslike, nonthreatening way to remind debtors that payments are due if the debtor wishes to avoid repossession of his or her vehicle. Such statements harmlessly facilitate the decisions of debtors, such as Mr. Ramirez, whether to keep their vehicles post-discharge. A conclusion that sending billing statements in either format violates § 524(a)(2) would eliminate the practical help that such billing statements provide to debtors, particularly when, as here, the discharged debtor had expressed his desire to reaffirm his installment debt and continued to make monthly payments throughout his bankruptcy case, pre- and post-discharge, voluntarily for all the evidence shows.

## CONCLUSION

There is no basis for a citation or finding of contempt against GMAC, under § 105(a) or under Rule 9020 of the Federal Rules of Bankruptcy Procedure. Mr. Ramirez has not established that GMAC vio-

lated § 524(a)(2). Judgment should be entered in favor of GMAC.

A separate judgment has been entered herein consistent with the foregoing.

### JUDGMENT

Based on my findings and conclusions set forth in the accompanying Memorandum of Decision entered herein, judgment hereby is rendered in favor of GMAC and against Jesus Chaide Ramirez on each of the six issues referred to me by the Honorable A. Howard Matz by his order entered in the district court on March 31, 2000,