**In re Jesus Chaide RAMIREZ, Debtor.**

**Jesus Chaide Ramirez, Appellant,**

v.

**General Motors Acceptance Corp., Appellee.**

**No. CV 02–1901 AHM.
Bankruptcy No. 97–53708–TD.**

United States District Court,
C.D. California.

June 11, 2002.

---

Donald F Hildre, Peggy J Reali, Dougherty Hildre Dudek & Haklar, San Diego, CA, for appellant.

Lawrence J Fallon, John B Sullivan, Rhonda L Nelson, Severson & Werson, San Francisco, CA, for appellee.

## ORDER AFFIRMING THE BANKRUPTCY COURT

MATZ, District Judge.

### INTRODUCTION

This matter is before the Court pursuant to the appeal of Plaintiff-appellant Jesus Chaide Ramirez (alternatively, "Appellant" or "Ramirez"). Although given a different case number, this appeal is related to an underlying class action brought by Ramirez to challenge the legality of various collection practices of defendant-appellee General Motors Acceptance Corporation ("GMAC"). (*Jesus Chaide Ramirez, et al. v. General Motors Acceptance Corp.*, CV 99–7846 AHM (RNBx)). In that action, Ramirez moved to refer several bankruptcy matters to the United States Bankruptcy Court. On March 30, 2000, this Court granted the motion and referred the following six matters to the Bankruptcy Court for resolution:

1. Whether GMAC's collection activities violated the automatic stay provision of § 362;

2. Whether GMAC's collection activities violated § 524(a)(2) of the Code and the related bankruptcy discharge;

3. Whether GMAC's failure to take reasonable steps to reaffirm pre-petition debt was a deliberate circumvention of § 524(c) of the Code;

4. Whether GMAC's actions constitute civil contempt for violations of the automatic stay under § 362 and § 524(a)(2) of the Code and the related bankruptcy discharge;

5. Whether GMAC violated any other provisions of the Code;

6. Whether GMAC is liable to Plaintiffs for any damages, sanctions, and costs associated with violations of the Code and the amount of such liability?

At trial before the Bankruptcy Court, Ramirez abandoned four of the six referred issues, choosing only to pursue claims two and six—whether GMAC's collection activities violated § 524(a)(2) of the Bankruptcy Code and the related bankruptcy discharge and, if so, the manner in which and the extent to which GMAC should be held accountable. (January 28, 2002 Memorandum of Decision After Trial ("Trial Memorandum") at 4). After a trial on the merits on those issues, the Bankruptcy Court found GMAC's collection activities did not violate § 524(a)(2) or the related bankruptcy discharge. As a result, the Bankruptcy Court declined to impose what it deemed the sole remedy available to Ramirez, a citation for contempt. (Trial Memorandum at 5).

Ramirez appeals the Bankruptcy Court's ruling that GMAC's collection activities did not violate 11 U.S.C. § 524(a)(2) and the related bankruptcy discharge.[1] The Court finds this matter is suitable for decision without oral argument pursuant to Local Rule 7–15 and Federal Rule of Civil Procedure 78. Because the Court finds Appellant's position lacks merit, the decision of the Bankruptcy Court is AFFIRMED.

## FACTS

The following factual findings were made by the Bankruptcy Court and are not challenged by Appellant. (Opening Brief at 1 fn. 1).

On January 27, 1993, Mr. Ramirez and his wife at the time, Lisa Denise Ramirez, purchased a new 1993 Chevrolet van from Leo Hoffman Chevrolet. GMAC provided Mr. and Mrs. Ramirez with financing for their purchase and retained a security interest in the van. Under the terms of the financing agreement, Mr. and Mrs. Ramirez were obliged to make 72 monthly payments of $461.31 to GMAC. Between June 1996 and October 1997, the financing agreement was modified three times by written agreements between Mr. Ramirez and GMAC to accommodate Mr. Ramirez's financial difficulties. These modifications extended the final payoff date on the 1993 financing agreement.

On November 13, 1997, Mr. and Mrs. Ramirez filed a voluntary chapter 7 bankruptcy petition. In that proceeding, the couple was represented by Edward E. Rios. After being counseled by Mr. Rios, it was Mr. Ramirez's understanding that he would have to complete his installment payments to GMAC if he wished to keep the van. Mr. Ramirez also believed that if he failed to make his installment payments, GMAC could repossess the van and hold him personally responsible for additional amounts.

On November 21, 1997, GMAC received notice that Mr. and Mrs. Ramirez filed for

---

1. There is no indication in the record that Ramirez appeals the Bankruptcy Court's ruling that a contempt citation is the sole remedy available for violation of the discharge injunction. In addition, Ramirez does not contest that he abandoned four of the six issues referred to the Bankruptcy Court.

bankruptcy relief. Thereafter, during the automatic stay period, GMAC did not send monthly statements to Mr. Ramirez. However, Mr. Ramirez did send his regular monthly payments to GMAC. Although Mr. Ramirez listed the debt to GMAC on his Schedule D and stated his intention to reaffirm that debt in his Chapter 7 Individual Debtor's Statement of Intention, Mr. Ramirez did not sign a reaffirmation agreement with GMAC.

On February 24, 1998, Mr. and Mrs. Ramirez received a discharge of their pre-petition debt. After the discharge order was entered, GMAC resumed sending regular monthly billing statements to Mr. Ramirez. Most of the billing statements were identical to those Mr. Ramirez received prior to filing for bankruptcy relief. However, in April, November and December 1998, GMAC sent Mr. Ramirez a billing statement that contained a new heading: "TRANSACTION SUMMARY OF VOLUNTARY PAYMENTS MADE." In addition, these statements contained a new comment: "VOLUNTARY PAYMENTS MUST BE TIMELY RECEIVED BY GMAC IF YOU WISH TO RETAIN POSSESSION OF YOUR VEHICLE." The Bankruptcy Court found GMAC sent the statements "to facilitate" and "to encourage" payments.

On April 16, 1999, Mr. Ramirez wrote to GMAC to inquire why the statements changed from what he referred to as the "regular statements" to the new "transaction summary of voluntary payment." The letter was received by GMAC but Mr. Ramirez did not receive a response from the company.

From March 1998 (after his discharge) through June 1999, Mr. Ramirez made 16 payments to GMAC totaling $7,158.75. Mr. Ramirez made the payments to keep the van so as to ensure his means to get to work. On June 2, 1999, Mr. Ramirez tendered his final payment under the GMAC financing agreement. Shortly thereafter, he received a statement from GMAC showing the van had been paid in full.

On July 30, 1999, Mr. Ramirez initiated a class action suit against GMAC in this Court. Mr. and Mrs. Ramirez were divorced in 2000 and Mr. Ramirez's former wife is not a party to this suit.

## DISCUSSION

### I. BANKRUPTCY COURT'S RULING

At trial on this matter, Ramirez contended that GMAC sent him monthly billing statements after he received his discharge of debt to compel payment on a debt. As a result, Ramirez argued, GMAC's conduct violated 11 U.S.C. § 524(a)(2), which states:

> A discharge under this title—
>
> > (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or *an act, to collect, recover or offset any such debt as a personal liability of the debtor*, whether or not discharge of such debt is waived . . .

11 U.S.C. § 524(a)(2) (emphasis added).

The Bankruptcy Court found that the evidence was insufficient to support a finding that GMAC sent any post-discharge billing statement to harass Mr. Ramirez or to suggest to him that GMAC believed he was still personally liable on his debt. (Trial Memorandum at 6). As a result, the court held that GMAC did not violate the plain language of section 524(a)(2). (Trial Memorandum at 7).[2] The court empha-

---

2. The court also held that although Mr. Ramirez believed that he was personally liable

for his debt to GMAC, he could not show that his belief was the product of wrongdoing on

sized two points in its ruling: (1) 11 U.S.C. Section 524(f) specifically protects the rights of debtors to voluntarily repay any debt; and (2) sending monthly statements to debtors in a business-like, non-threatening way "facilitate[s] the decisions of debtors, such as Mr. Ramirez, whether to keep their vehicles post-discharge." (*Id.*). The court reasoned that adopting Ramirez's position would eliminate the practical help billing statements provide to debtors and thereby limit their ability to exercise their right to voluntarily repay any debt pursuant to 11 U.S.C. Section 524(f). (*Id.*). As a result, the Court held GMAC's conduct did not violate section 524(a)(2).

## II. STANDARD OF REVIEW

Appellant is unclear as to whether he seeks to challenge the factual findings of the Bankruptcy Court. His briefs state at various points that he does not challenge the Bankruptcy Court's findings and this is purely a legal issue. (Designation of Record at 1–2; Opening Brief at 1 fn.1; Reply at 1). In addition, Appellant has not attached a transcript of the trial, thereby precluding this Court's ability to review the findings of the Bankruptcy Court. *Rachbach v. Cogswell,* 547 F.2d 502, 504 (10th Cir.1976). Nonetheless, Appellant asks the Court to consider portions of the deposition testimony of Keith Hamilton and attaches a transcript of such deposition to his opening brief. This is inappropriate, as Appellant failed to attach Mr. Hamilton's deposition testimony to his "Designation of Record on Appeal." LO-

CAL RULE 4.1, 4.4. As such, the Court will not consider this evidence.[3]

■ The sole issue remaining before this Court is a legal one. The Court reviews *de novo* the legal issue of whether, based on the facts found by the Bankruptcy Court, GMAC's conduct violated the discharge injunction established by 11 U.S.C. § 524(a). *In re Beeney,* 142 B.R. 360, 362 (9th Cir. BAP 1992).

## III. GMAC'S CONDUCT DID NOT VIOLATE SECTION 524(a)(2).

■ The parties are largely in agreement as to several issues of law pertinent to this dispute. Upon a discharge of debt in bankruptcy, a debtor is relieved of personal liability for scheduled pre-petition debts. 11 U.S.C. §§ 524(a)(2); *Johnson v. Home State Bank,* 501 U.S. 78, 82–83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Thus, as GMAC points out, that is usually the end of the story for unsecured debts. However, in cases where the creditor also holds a secured interest in the property subject to a scheduled debt, a discharge extinguishes only the personal liability of the debtor. *Johnson,* 501 U.S. at 82–83, 111 S.Ct. 2150. A creditor's right to foreclose on the property "survives or passes through the bankruptcy." *Id.*

Under the express terms of the Bankruptcy Code, a debtor is given three options for dealing with secured debts. First, the debtor can surrender the collateral to the creditor. 11 U.S.C. § 521(2)(A); *In re Boodrow,* 126 F.3d 43, 49 (2d Cir.1997). Second, the debtor can

---

GMAC's part. (Trial Memorandum at 6). Appellant does not challenge the court's finding as to his subjective belief, but rather contends that GMAC's post-discharge collection policy violates section 524(a)(2) regardless of the subjective belief of the debtor. (Opening Brief at 1 fn. 1).

**3.** Appellant states this dispute is insignificant as the Bankruptcy Court's findings of fact reference Mr. Hamilton's testimony and do so in a manner consistent with Ramirez's arguments. (Reply at 2). To the extent the Bankruptcy Court made factual findings regarding Mr. Hamilton's testimony, those findings are accepted as true and will be considered in adjudicating the legal issue before this Court.

redeem the property "by paying the creditor the value of the property. Most courts require a debtor to pay the creditor in one 'lump sum' payment rather than in installments, unless the creditor agrees otherwise." *In re Boodrow,* 126 F.3d at 49; 11 U.S.C. § 521(2)(A). Third, "a debtor can reaffirm a debt by entering into a new loan agreement with the creditor, a legal obligation that survives the debtor's discharge from bankruptcy." *Id.*

■ In the Ninth Circuit, debtors retain a fourth option—retaining the property and continuing to make the payments specified in their contract with the creditor. *In re Parker,* 139 F.3d 668, 673 (9th Cir.1998).[4] Under this fourth option, a debtor is entitled to force an entirely new agreement on the creditor whereby the debtor retains possession of the secured property by continuing to make payments under the contract, but the debtor is no longer personally liable on any deficiency that may arise. Thus, if the debtor fails to make the required payments, the creditor's sole recourse is foreclosure on the property. *Johnson,* 501 U.S. at 83, 111 S.Ct. 2150.

■ There is no dispute that Appellant exercised his rights under the "fourth option" by retaining his Chevrolet van and continuing to make payments according to the terms of his pre-petition contract with GMAC. The sole legal issue before this Court is whether GMAC violated 11 U.S.C. § 524(a)(2) by continuing to send Appellant monthly billing statements after the discharge.

As both sides implicitly acknowledge in their briefs, this question has not been addressed by the Ninth Circuit. However, the Ninth Circuit has interpreted similar language under 11 U.S.C. § 362(a)(6) and held that, absent coercion or harassment by the creditor, "mere requests for payment are not barred" by the automatic stay provision in Chapter 11 bankruptcy petitions. *Morgan Guaranty Trust Co. of New York v. American Savings and Loan Assoc.,* 804 F.2d 1487, 1491 (9th Cir.1986).[5] In addition, some bankruptcy courts in this circuit have indicated that a secured creditor may send billing statements to a debtor to facilitate the making of post-petition payments. *In re Kibler,* 2001 WL 388764, *5 (Bankr.E.D.Cal.) (noting that in jurisdictions allowing debtors to utilize the "fourth option" some bankruptcy judges have ordered secured creditors to continue their customary pre-petition billing practices); *In re Henry,* 266 B.R. 457, 472 (Bankr.C.D.Cal.2001) ("It is proper, for example, for the secured creditor to send monthly statements to the debtor after the bankruptcy filing, and payment coupons or other means to facilitate the making of monthly postpetition payments by the debtor.").

In opposition to these authorities, Appellant cites a number of cases that are either irrelevant or wholly distinguishable. Several concern post-discharge misconduct by unsecured creditors. *In re Driggers,* 204 B.R. 70 (Bankr.N.D.Fla.1996); *In re Singleton,* 269 B.R. 270 (Bankr.D.R.I.2001); *In re Rijos,* 263 B.R. 382 (1st Cir. BAP 2001); *In re Cherry, III,* 247 B.R. 176 (Bankr.E.D.Va.2000). These cases are en-

---

4. The Fifth, Seventh and Eleventh Circuits have refused to allow debtors this "fourth option." *See Johnson v. Sun Fin. Co.,* 89 F.3d 249, 252 (5th Cir.1996); *In re Edwards,* 901 F.2d 1383, 1387 (7th Cir.1990); *Taylor v. AGE Fed. Credit Union,* 3 F.3d 1512, 1516 (11th Cir.1993).

5. 11 U.S.C. § 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before [the filing of the petition]."

tirely irrelevant because a discharge relieves a debtor of personal liability for his or her debts and thus, absent reaffirmation, wholly extinguishes an unsecured debt. Those cases cited by Appellant that involve secured debt—*In re Draper*, 237 B.R. 502 (Bankr.M.D.Fla.1999) and *In re Roush*, 88 B.R. 163 (Bankr.S.D.Ohio 1988)—are also distinguishable. *Draper* was decided in a circuit where debtors lack the "fourth option" of *Parker* and involved the use of severe coercion by the creditor. *In re Draper*, 237 B.R. at 504–05. In addition, *Roush* involved a creditor's effort to collect on a secured debt after the property had been "surrendered" by the debtor to the creditor. *In re Roush*, 88 B.R. at 164. *Roush* did not concern what actions of a creditor may violate the discharge injunction where the debtor retains the secured property and continues to make payments.

The Court finds the holding and reasoning of the Bankruptcy Court persuasive. In this circuit, Debtors have a right to retain possession of secured property postdischarge by continuing to make payments under the terms of their original agreement with the creditor. In cases where debtors exercise this right, because the debtor must pay the creditor some contact between the debtor and the creditor is unavoidable. Thus, to hold that a secured creditor is precluded from sending monthly billing statements to a debtor would not eliminate all contact between debtors and creditors. Rather, such a ruling would solely force debtors to guess, with little guidance, the due date and proper amount of their monthly payments. This would unduly complicate the lives of debtors and likely result in a greater number of missed payments and foreclosures by creditors. This could not be the intent of Congress in passing 11 U.S.C. § 524(a)(2) and it surely was not the intent of the Ninth Circuit in providing debtors a "fourth option" in *Parker*.

Here, the Bankruptcy Court found GMAC sent monthly statements to Appellant so as "to facilitate" and "encourage" payments. (Trial Memorandum at 3). The court did not find that such statements were sent to harass or coerce Mr. Ramirez into making involuntary payments. Moreover, although GMAC did alter its normal monthly statements in April, November and December 1998, those altered statements commented only that "VOLUNTARY PAYMENTS MUST BE TIMELY RECEIVED BY GMAC IF YOU WISH TO RETAIN POSSESSION OF YOUR VEHICLE." (*Id.*). This heading is an accurate reflection of the law and in no way indicates that GMAC sought to enforce the debt as a *personal liability* of Mr. Ramirez. As such, the statements do not fall within those expressly enjoined by 11 U.S.C. § 524(a)(2).

## CONCLUSION

For the foregoing reasons, and good cause appearing therefor, the ruling of the Bankruptcy Court—outlined in its January 28, 2002 "Memorandum of Decision After Trial"—is AFFIRMED.

IT IS SO ORDERED.