**In re Paul George GARSKE and Veda Lee Garske, Debtors.**

**Veda Lee Garske, Appellant and Cross–Appellee,**

**v.**

**Arcadia Financial, Ltd., Appellee and Cross–Appellant.**

**BAP Nos. NC–02–1223–RyKMa, NC–02–1237–RyKMa. Bankruptcy No. 98–13427. Adversary No. 00–1139.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 23, 2002.

Filed Dec. 20, 2002.

Timothy J. Becker, Zimmerman Reed, P.L.L.P., Minneapolis, MN, for Veda Lee Garske.

Jan T. Chilton, Severson & Werson, San Francisco, CA, for Arcadia Financial, Ltd.

Before: RYAN, KLEIN, and MARLAR, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

After Veda Garske ("Debtor") filed a chapter 7[1] bankruptcy petition,' she obtained a discharge (the "Discharge"). Debtor then filed a class action complaint (the "Complaint") against Arcadia Financial, Ltd. ("Arcadia") under § 524(a)(2).

Debtor also filed a motion for class certification (the "Certification Motion") and a motion (the "Motion") for summary judgment against Arcadia. In response, Arcadia filed a cross motion (the "Cross Motion") for summary judgment.

After a hearing, the bankruptcy court granted the Cross Motion (the "Order"). Later, the bankruptcy court certified the class (the "Certification Order"). Debtor timely appealed the Order, and Arcadia timely cross-appealed the Certification Order.

We AFFIRM.

## I. FACTS

In 1995, Debtor purchased a 1988 Ford Tempo (the "Vehicle") on credit. Olympica Financial provided Debtor with the financing for the Vehicle. Under the terms of the financing agreement (the "Contract"), Debtor was obligated to make 48 monthly payments of $154.74 to Olympica Financial. The Contract was later assigned to Arcadia.

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

In 1998, Debtor filed her chapter 7. Debtor listed Arcadia on her schedules as secured, with a balance owing on the Vehicle of approximately $2,700. While Debtor filed a statement of intention to exempt and redeem[2] the Vehicle pursuant to § 722, she did not exempt or redeem the Vehicle. Debtor, however, understood that she had to continue to make payments to Arcadia in order to keep the Vehicle.

Upon learning of Debtor's bankruptcy, Arcadia ceased all collection efforts during the pendency of the bankruptcy.

After the Discharge, Debtor retained the Vehicle without either reaffirming the debt to Arcadia or redeeming the Vehicle. Arcadia transferred Debtor's account to its retained collections unit (the "Unit").[3] Arcadia instructed the Unit collectors to contact its customers post-discharge to determine if they intended to retain possession of the vehicle and continue making voluntary payments.[4] If the customer decided to retain the vehicle, the collectors requested that voluntary payments be made.

Arcadia's corporate philosophy is to "keep as many of [the discharged chapter 7 customers] in their vehicles as long as they make contractual payments in exchange for the ability to retain possession of their vehicles." Arcadia's Memorandum of Points and Authorities in Opposition to Debtor's Motion for Summary Judgment (Jan. 18, 2002), at 3. Nevertheless, Arcadia advised its customers that it had the right to repossess a vehicle if voluntary payments ceased.[5] Arcadia applied its policy nationally to all chapter 7 discharged customers.

From February 1999 to February 2000, Debtor was usually two to three months delinquent on her account. Arcadia contacted Debtor to determine her intention to retain the Vehicle and make payments. The contacts were limited to written and phone communications.

The parties disagreed on the aggressiveness of Arcadia's collection tactics. According to Debtor, Arcadia called her on 36 occasions between February 1999 and February 2000. Debtor indicated that Arcadia "demand[ed] payment, threaten[ed] repossessions and generally harass[ed] [her]" on each of those phone conversations. Garske's Memorandum of Law in Support of Motion for Summary Judgment and Contempt (Jan. 3, 2002), at 4. Arcadia vigorously objected to Debtor's accusations. According to Arcadia, it contacted Debtor on 14 occasions, two of which were at Debtor's request. Of the 14 phone calls, Arcadia indicated that it spoke to Debtor on only four occasions. The remaining calls were either answered by another person or Arcadia simply left phone messages. Arcadia also admitted calling Debtor at work on several occasions.[6]

---

**2.** Debtor indicated that she did not understand the implication of a "redemption." However, it was always her intention to retain the Vehicle, even after the Discharge.

**3.** According to Arcadia, the Unit was established in response to the growing number of its customers who had received a chapter 7 discharge while retaining possession of their vehicles without reaffirming the underlying debt or redeeming the vehicle.

**4.** The Unit collectors normally made contact with a customer within 10 days after a customer failed to make a voluntary payment.

**5.** Usually, it is in Arcadia's best interest for its customer to retain the vehicle and make payments because it enables Arcadia to receive more money.

**6.** The appellate record (the "Record") contains Arcadia's record of Debtor's account. To the extent comments were written using abbreviations, we cannot determine the number of times Arcadia actually contacted Debtor by phone.

Undisputedly, Arcadia made no threats to Debtor other than to assert its right to repossess the Vehicle if payments were not timely made. Further, Arcadia never threatened to sue Debtor personally. During this period, Debtor paid over $1,400 to Arcadia. Frustrated with Arcadia's contacts, Debtor demanded that Arcadia stop calling her. In return, Arcadia told Debtor that "as long as [Debtor] has [its] car, [Arcadia] ha[s] the right to call her regarding her voluntary payments if she is past due." Deposition of Kelly Hall (Sept. 28, 2001), at 244. Arcadia eventually wrote off Debtor's account in April 2000.

Later, Debtor filed the Complaint under § 524(a)(2). In bringing a class action against Arcadia, Debtor alleged that Arcadia's collection efforts after the Discharge violated the discharge injunction. Debtor sought injunctive and declaratory relief under § 524(a)(2), along with compensatory and punitive damages.

In its answer, Arcadia denied engaging in any improper collection practices, maintained that the class action was improper and additionally denied the existence of the class.

Subsequently, Debtor filed the Certification Motion. Debtor argued that the proposed class met the requirements under FRCP 23(a) and sought certification under FRCP 23(b)(2) or (b)(3). In opposition, Arcadia argued that both the intra-jurisdictional and inter-jurisdictional conflicts of law produced "non-common" issues. According to Arcadia, non-common issues predominated because each plaintiff in the class experienced different "solicitation" activity. Arcadia further objected to the class under FRCP 23(b)(2) because Debtor primarily sought monetary rather than injunctive relief.

The bankruptcy court rejected Arcadia's arguments and certified the class. First, the bankruptcy court found commonality as "the issue of whether or not [Arcadia's] conduct violate[d] the debtor's discharge injunction, is exactly the same . . ." Memorandum on Class Certification (Feb. 14, 2002), at 2. Also, the bankruptcy court found that the primary relief in Debtor's case was injunctive and declaratory. According to the bankruptcy court, "[a]side from attorney's fees, individual damages will be either nominal or non-existent." *Id.*

The bankruptcy court certified the class under FRCP 23(b)(2), noting that it consisted of

all debtors who obtained a discharge, retained [Arcadia's] collateral without reaffirmation, became delinquent, and were threatened with repossession by [Arcadia] if they did not bring their payments current. The class will not include debtors in cases where the court issued an order specifying [Arcadia's] rights or there is an agreement between the debtor and [Arcadia] outlining said rights.

Memorandum on Class Certification (Feb. 14, 2002), at 2.

Meanwhile, Debtor filed the Motion, arguing that telephone calls by secured creditors to debtors post-discharge are per se violations of § 524(a)(2). In addition, Debtor sought an order holding that Arcadia was in contempt of the discharge injunction and ordering a refund of all payments made to Arcadia. Debtor also requested compensatory and punitive damages.

Arcadia opposed the Motion and filed the Cross Motion. It argued that § 524(a)(2) does not prohibit all collection activities, but only activities that seek to recover a discharged debt as a personal liability of a debtor. In addition, Arcadia stressed that it only advised Debtor that it

would repossess the Vehicle if she failed to make payments.

After a hearing, the bankruptcy court granted the Cross Motion. It refused to follow the holding in *Henry v. Assocs. Equity Home Servs. (In re Henry)*, 266 B.R. 457 (Bankr.C.D.Cal.2001) that only written communications are permitted under § 524(a)(2) because "[it] d[id] not understand the legal basis for this interpretation of the law." Memorandum on Cross–Motions for Summary Judgment (Apr. 8, 2002), at 2.

> While it is certainly easier for a telephonic communication to "stray into improper collection activities," this court does not see how there can be a violation of the discharge injunction until and unless improper collection activities take place. A phone call is not, as alleged by [Debtor] in reliance on Henry, a per se improper collection activity.

*Id.*

The bankruptcy court also rejected Debtor's position that Arcadia harassed her:

> Garsky [sic] had it within her power to stop Arcadia's phone calls two ways: by bringing her payments current or by telling Arcadia to pick up the car. Arcadia had a right to either the payments or the car. The court does not see how Garsky can complain about actions she could have stopped, and it does not see how Arcadia can be held liable for asserting its rights.

Memorandum on Cross–Motions for Summary Judgment (Apr. 8, 2002), at 2.

In summary, the bankruptcy court held that Arcadia did not violate the discharge injunction because it was not attempting to collect the debt as a personal liability of Debtor. Also, it found that Arcadia did not act improperly by telephoning Debtor. Therefore, the bankruptcy court held that

Arcadia did not violate § 524(a)(2) and granted the Cross Motion. Debtor timely appealed, and Arcadia timely cross-appealed.

## II. ISSUES

A. Whether the bankruptcy court erred in denying the Motion and granting the Cross Motion because telephone calls are not a per se violation of the discharge injunction and Arcadia's collection activities did not violate § 524(a)(2).

B. Whether the bankruptcy court abused its discretion in granting the Certification Motion.

## III. STANDARD OF REVIEW

We review a grant or denial of summary judgment de novo. See *Am. Broad. Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823, 828 (9th Cir.2001).

■ We review the bankruptcy court's decision to grant a class certification for an abuse of discretion. See *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1233–34 (9th Cir.1996).

## IV. DISCUSSION

A. *The Bankruptcy Court Did Not Err in Denying the Motion and Granting the Cross Motion.*

The bankruptcy court denied the Motion and granted the Cross Motion because Arcadia's collection activities did not violate the discharge injunction under § 524(a)(2). On appeal, Debtor contends that the bankruptcy court erred because phone calls to a debtor to solicit timely payment on a discharged debt that is secured by a retained vehicle violate the discharge injunction. Alternatively, she argues that Arcadia's collection activities violated § 524(a)(2). We disagree.

1. *A phone call is not a per se violation under § 524(a)(2).*

■ Section 524(a)(2), often known as the discharge injunction,

operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived....

■ 11 U.S.C. § 524(a)(2). The discharge injunction survives the bankruptcy case and applies permanently with respect to every debt that is discharged. *See Henry*, 266 B.R. at 473.

The purpose of the discharge injunction is to "effectuate one of the primary purposes of the Bankruptcy Code, to afford the debtor a financial fresh start." *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 182 (Bankr.E.D.Va.2000).

■ Therefore, upon the discharge of a debt in bankruptcy, a debtor is relieved of personal liability for that debt. *See Johnson v. Home State Bank*, 501 U.S. 78, 82–83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). As such, an unsecured creditor has no right to any of the debtor's property post-discharge to satisfy a discharged debt. *See Ramirez v. General Motors Acceptance Corp. (In re Ramirez)*, 280 B.R. 252, 256 (C.D.Cal.2002) ("*Ramirez II*"). However, in cases where the creditor holds a secured interest in property subject to a scheduled debt, a discharge extinguishes only the personal liability of the debtor. "Notwithstanding the discharge, the [secured creditor]'s right to proceed against [the debtor] in rem survived the Chapter 7 liquidation." *Johnson*, 501 U.S. at 80, 111 S.Ct. 2150.

The Bankruptcy Code provides a debtor with three options regarding secured debts. They are the surrender of the collateral, the redemption of the collateral by paying the creditor its fair market value, and the reaffirmation of the debt. *See* 11 U.S.C. § 521(2)(A); *see also Ramirez II*, 280 B.R. at 256–57.

■ The Ninth Circuit, in *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 673 (9th Cir.1998), provided a fourth option [7] by allowing a debtor to retain her property, provided that she continues to make her contract payments to the creditor. This fourth option, also known as a "ride-through," creates a new agreement between the debtor and the creditor. Under the fourth option, the debtor is not personally liable on any deficiency that may arise because the underlying debt creating the personal liability has been discharged. *See Ramirez II*, 280 B.R. at 257. Therefore, if the debtor fails to make the required payments, the creditor's sole recourse is to repossess or foreclose on the property. *See Johnson*, 501 U.S. at 83, 111 S.Ct. 2150.

The issue of whether a post-discharge phone solicitation is a per se violation under § 524(a)(2) has not been addressed by the Ninth Circuit. However, the Ninth Circuit has interpreted similar language under § 362(a)(6) and held that "mere requests for payment are not barred" absent coercion or harassment by the creditor. *Ramirez II*, 280 B.R. at 257 (citing *Morgan Guar. Trust Co. of N.Y. v. American Sav. & Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir.1986)).

In *Ramirez v. General Motors Acceptance Corp. (In re Ramirez)*, 273 B.R. 620

7. The fourth option has been rejected by the Fifth, Seventh, and Eleventh Circuits. See *Ramirez II*, 280 B.R. at 257 n. 4.

(Bankr.C.D.Cal.2002) ("*Ramirez I*"),[8] the bankruptcy court held that a written "informative courtesy" statement to the debtor after discharge did not violate § 524(a)(2). *Id.* at 624.

There, the creditor resumed sending billing statements to the debtor after discharge. The billing statements contained the heading "TRANSACTION SUMMARY OF VOLUNTARY PAYMENTS MADE," and also contained the comment "VOLUNTARY PAYMENTS MUST BE TIMELY RECEIVED ... IF YOU WISH TO RETAIN POSSESSION OF YOUR VEHICLE." *Id.* at 622. The creditor admitted that it sent the statements "to facilitate payment." *Id.* The bankruptcy court, looking to the plain language of 524(a)(2), found that there was nothing in the statements to indicate that the creditor asserted or believed that the debtor was personally liable to make any further payment. Therefore, the bankruptcy court held that the statements were merely an "informative courtesy," suggesting to the debtor that he would have to meet his monthly payment obligation in order to retain the vehicle. *Id.* at 624.

On appeal, the district court affirmed. The district court held that in cases where the debtor exercises the "ride-through" option, "because the debtor must pay the creditor some contact between the debtor and the creditor is unavoidable." *Ramirez II*, 280 B.R. at 258.

The district court further stated that:

... to hold that a secured creditor is precluded from sending monthly billing statements to a debtor would not eliminate all contact between debtors and creditors. Rather such a ruling would solely force debtors to guess, with little

guidance, the due date and proper amount of their monthly payments. This would unduly complicate the lives of debtors and likely result in a greater number of missed payments and foreclosures by creditors. This could not be the intent of Congress in passing 11 U.S.C. § 524(a)(2) and it surely was not the intent of the Ninth Circuit in providing debtors a "fourth option" in *Parker*. *Id.*

As such, the district court found that the billing statements were not sent to harass or coerce the debtor into making involuntary payments. In addition, it found that the billing statements were not enforced to collect the debt as a personal liability of the debtor. Accordingly, the *Ramirez II* court held that the written statements did not violate § 524(a)(2). *Id.*

Debtor relies heavily on *Henry* for the proposition that a phone solicitation to a debtor after discharge is a per se violation of § 524(a)(2). There, the debtors filed a statement of intention in which they stated that they intended to keep their home and make the mortgage payments. *See Henry*, 266 B.R. at 466. Subsequent to the debtors' discharge, the creditor either attempted to contact or actually contacted the debtor over 45 times within seven months about the debt. Most of the contacts were made by telephone, where the creditor demanded payments from the debtors. *Id.* at 470.

According to the *Henry* court, "[w]here a debtor files the statement of intention within the statutory period, there is no need for the secured creditor to contact the debtor to determine what the debtor's intentions are with respect to the property." *Id.* at 471. The *Henry* court rea-

---

**8.** Interestingly, Debtor's attorney, Timothy J. Becker of Zimmerman Reed, P.L.L.P., also represented the debtor in *Ramirez I*.

soned that the creditor could simply determine the debtor's intentions from the papers filed with the court. *Id.*

However, the *Henry* court also recognized the need for certain contacts when a debtor's statement of intention indicates that she intends to make payments and to keep property that is subject to a lien. Nonetheless, without citing to any authority, the *Henry* court noted that

> [p]roper communications in this context initiated by a creditor are limited to written communications. One benefit of a written communication is that it creates a record which permits the evaluation of whether the communication was proper, and did not stray into improper collection activities.

*Id.* at 473. Thus, the bankruptcy court held that a creditor could not use the telephone to initiate post-discharge collection activities. *Id.*

It is not apparent to us what the legal basis is for the *Henry* court's distinction between written and telephonic communications. Certainly, Congress views as inappropriate any act to collect a discharged debt, whether by telephone calls, letters, or personal contacts. *See Mickens v. Waynesboro Dupont Employees Credit Union, Inc. (In re Mickens)*, 229 B.R. 114, 116 (Bankr.W.D.Va.1999) (citing S. REP. No. 95–989, at 80 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5866).

> [Section 524(a) ] has been expanded over a comparable provision in Bankruptcy Act § 14f to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives,

or employers, harassment, threats of possession, and the like. The change . . . is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it.

■ S.REP. No. 95–989, at 80, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5866 (emphasis added). Therefore, collection activities, whether written or oral, may cause a § 524(a)(2) violation. *Id.*

Debtor's reliance on *Cherry* is misplaced because the post-discharge misconduct concerned an unsecured creditor. The creditor had no excuse for contacting the debtor post-discharge absent the debtor's reaffirmation of the debt. *See Cherry*, 247 B.R. at 179; *see also Ramirez II*, 280 B.R. at 257–58. Debtor's citation to *In re Roush*, 88 B.R. 163 (Bankr.S.D.Ohio 1988) is also not helpful because the creditor sought to collect on a secured debt after the property had been "surrendered" by the debtors to the creditor. *See Roush*, 88 B.R. at 164. Again, the creditor had no excuse for its actions in that *Roush* did not involve a creditor seeking to get paid where the debtor retained the secured property with the expectation of continuing to make payments.[9]

We find the holding and reasoning of *Ramirez I* and *Ramirez II* persuasive. Because Debtor must pay Arcadia to retain the Vehicle, contact between them is unavoidable. *See Ramirez II*, 280 B.R. at 258. Such contact may encompass both written and oral communications. *See Mickens*, 229 B.R. at 116 (citing S. REP. No. 95–989, at 80, U.S.Code Cong. & Ad-

---

9. During oral argument on this appeal, Debtor cited *In re Gibson*, 16 B.R. 682 (Bankr. S.D.Ohio 1981), to further support her position that phone solicitations should be distinguished from written communications. *Gibson* is distinguishable. Unlike here, *Gibson* deals with chapter 13 debtors who confirmed a plan. The *Gibson* court held that the credi-

tor's post-confirmation collection activities outside the scope of the plan violated § 362. In addition, the bankruptcy court found that the debtors were harassed because the creditor visited the debtors' home to repossess the property. Further, the creditor called the debtors to threaten repossession and a sheriff's execution. *Id.* at 683–84.

min.News 1978, pp. 5787, 5866). Therefore, the bankruptcy court did not err in holding that phone calls to collect payments in a ride-through jurisdiction are not per se improper collection activities under § 524(a)(2).

### 2. *Arcadia's collection activities did not violate § 524(a)(2).*

■ Debtor argues that Arcadia's post-discharge collection activities violated § 524(a)(2). We disagree.

The discharge injunction prohibits only those acts that seek to collect, recover, or offset discharged debts as the "personal liability of the debtor." 11 U.S.C. § 524(a)(2). Clearly, a secured creditor has a right to repossess its collateral if the debtor fails to make payments. *See Johnson,* 501 U.S. at 83, 111 S.Ct. 2150. So long as the creditor is not collecting the debt as a "personal liability of the debtor," there is no violation under § 524(a)(2). *See* 11 U.S.C. § 524(a)(2).

Here, notwithstanding her statement of intention, Debtor chose to retain the Vehicle by continuing to make her payments under the Contract. She understood that in order to keep the Vehicle, she had to continue to make timely payments to Arcadia. No evidence was offered that Arcadia made any demands of Debtor for payment other than as a condition for her retaining possession of the Vehicle. In fact, Debtor admitted that Arcadia never threatened to sue her personally for the payments owing on the Vehicle.

Based on our review of the Record, Debtor did not establish that Arcadia violated § 524(a)(2) by seeking to collect on the discharged debt as a personal liability of Debtor. Because there are no genuine issues of material fact that Arcadia sought to collect the discharged debt as Debtor's personal liability, the bankruptcy court did not err in denying the Motion and granting the Cross Motion. Thus, we affirm the bankruptcy court's judgment in favor of Arcadia.

### B. *By Affirming the Bankruptcy Court's Judgment in Favor of Arcadia, We Need Not Reach the Issue of Whether the Bankruptcy Court Abused Its Discretion in Granting the Certification Motion.*

Because we have affirmed the bankruptcy court's judgment in favor of Arcadia, we need not consider the cross appeal. According to Arcadia, it filed the cross appeal seeking review of the Certification Order only as a protective measure. Thus, our affirmance of the judgment in favor of Arcadia has rendered it unnecessary for us to review the Certification Order.

## V. CONCLUSION

In sum, the bankruptcy court did not err in denying the Motion and granting the Cross Motion because a phone call is not a per se violation under § 524(a)(2) and Arcadia's post-discharge collection activities did not violate the discharge injunction.

AFFIRMED.

KLEIN, Bankruptcy Judge, concurring:

I join the majority and write separately to emphasize the importance and difficulty of the issue of what a creditor may do in the wake of a debtor's election of the so-called "fourth option" under § 521(2) of remaining current under an installment contract to pay for consumer goods that the Ninth Circuit recognized in *McClellan Fed. Credit Union v. Parker (In re Parker),* 139 F.3d 668, 673 (9th Cir.1998).

In so doing, there is a note of poetic justice because I must confess to a role in creating the problem and am in the position of having to skin my own skunk. I was the trial judge in *Parker.* The Ninth Circuit, in affirming my ruling, was agree-

ing with my analysis in *In re Weir*, 173 B.R. 682 (Bankr.E.D.Cal.1994), upon which my *Parker* ruling was based.

The gravamen of the analysis was that Congress, by way of calculated ambiguity for reasons explained in *Weir*, left open the possibility of continuing to perform a consumer contract without reaffirming it. The benefit to the debtor of not reaffirming is that the debtor is not exposed to the possibility of a post-bankruptcy deficiency judgment. The benefit to the creditor of the debtor continuing to pay is that it is better than a redemption because the creditor retains its security and has the opportunity to collect the full contract price notwithstanding that the security usually is worth less.

The conceptual problem is that, by retaining the collateral and continuing to perform all contractual obligations, a contract remains de facto even though it has not been reaffirmed. It is an internal contradiction that is neither fish nor fowl. Trouble is bound to ensue if the debtor is not punctilious in performing the obligations imposed by the contract, which in the case of a motor vehicle typically include timely payment, insurance, and licensing. The slightest misstep may warrant repossession.

The only way this ambiguous and not-very-satisfactory situation can function is to recognize that communications between debtors and creditors must be governed by a rule of reason.

Debtor's position in this action that only written communications are permitted defies reason. To be sure, written communications tend to be more polite than other communications. Nevertheless, the creditor—who, after all, loses the benefit of a right to a deficiency judgment by virtue of not having a reaffirmation agreement—should not be stripped of the right to communicate with the discharged debtor by the same means that would be permitted if the debt had been reaffirmed. The logical implication of Debtor's position is that Arcadia should respond to a late payment by asking no questions and instantly repossessing the collateral. I perceive no merit in this.

Finally, I question the viability of an action seeking an injunction to enjoin someone from violating an injunction. If, as Debtor contends, the § 524(a)(2) discharge injunction has been offended, the remedy is by way of a contempt proceeding.